CLARK *v.* E. C. CLARK MACHINE CO.[1]

1. CORPORATIONS — STOCKHOLDERS — SALE OF STOCK — RIGHTS OF CREDITORS.

   On a bill by creditors of a corporation against retiring stockholders, evidence examined, and *held*, that the sale of defendants' stock, consummated before complainants became creditors, was to the corporation and not to the officer to whom it was assigned, and was made in entire good faith without any intent to defraud creditors.

2. SAME—STOCKHOLDERS—ESTOPPEL.

   Stockholders participating in a purchase by the corporation of the stock owned by another stockholder are estopped to deny the validity of the transaction.

3. SAME—STOCKHOLDER OR CREDITOR—EVIDENCE.

   On a bill by creditors of a corporation against the corporation and retiring stockholders, evidence examined, and *held*, that the transactions of one of the complainants with the corporation constituted him a stockholder and not a creditor, and that he had no claim against the corporation for the money he had contributed to the capital.

[1] Rehearing denied May 27, 1908.

4. SAME — CAPITAL STOCK — ASSETS — TRUST FUND — SUBSEQUENT CREDITORS.

The assessable stock and the assets of a corporation constitute a trust fund, not only for the benefit of existing, but also for future, creditors, and the assets cannot be used by the corporation in the purchase of its outstanding stock to the exclusion of subsequent creditors.

5. SAME—STOCK—PURCHASE BY CORPORATION — MORTGAGE — VALIDITY.

Where a corporation has given a mortgage upon all its assets to secure the purchase price of certain of its stock, a part of which it has resold, the mortgage is invalid as to subsequent creditors to the extent of the stock not resold.

Appeal from Wayne; Donovan, J. Submitted January 18, 1907. (Docket No. 64.) Decided March 17, 1908.

Bill by Minnie Clark and Chauncey R. Clark against the E. C. Clark Machine Company, Ernest C. Clark, William S. Wells, and Harvey J. Wells to set aside the sale of certain corporate stock, and to enjoin the foreclosure of a mortgage. Defendants Wells filed an answer in the nature of a cross-bill for the foreclosure of a mortgage, and the appointment of a receiver. Fairbanks, Morse & Company and others petitioned to intervene as creditors of defendant corporation. The Detroit Trust Company, as trustee in bankruptcy, was substituted for defendant corporation. From a decree for cross-complainants, defendant Detroit Trust Company and the interveners appeal. Modified and affirmed.

*William E. Fenwick* (*A. B. Hall*, of counsel), for cross-complainants.

*Walker & Spalding*, for intervening petitioners.

*Bowen, Douglas, Whiting & Murfin*, for defendant trustee.

Ernest C. Clark in February, 1904, owned and operated a machine shop in the city of Detroit. Defendant William S. Wells was then living in Pennsylvania.

Through his son, the defendant Harvey J. Wells, he learned of the business being conducted by Clark. Desiring to invest some money and to secure work for his son, he came to Detroit, and Mr. Clark and William and Harvey Wells organized a corporation with a capital stock of $15,000, $10,000 of which was paid in. Mr. W. S. Wells put in $5,000 in cash; Mr. Clark put in his machinery and tools which were inventoried at $7,500. Mr. E. C. Clark had 50 shares, Mr. W. S. Wells 49, and Mr. H. J. Wells 1. Mr. E. C. Clark became manager of the company, and the three became directors. The business continued until May 27, 1904. Some trouble had arisen between Clark and the Wellses, and negotiations were entered into to buy out the interest of the latter. An agreement was signed between Clark and defendant W. S. Wells by which Clark was to buy Mr. Wells' stock for $5,000, payable at different times in the future, the payments to be secured by chattel mortgage upon the tools, machinery, and fixtures of the company. The agreement was abandoned.

On May 27th, at the directors' meeting, all being present and owning all the stock, a resolution was unanimously adopted that the corporation purchase the 50 shares of the stock of the corporation held by Messrs. W. S. and H. J. Wells for the sum of $5,000, said stock to be transferred from the said parties to E. C. Clark as treasurer of said corporation. Thereupon the following resolution was adopted:

"Whereas, The Clark-Wells Machinery Company is indebted to W. S. Wells in the sum of five thousand dollars ($5,000),

"Therefore, be it resolved, that the said Clark-Wells Machinery Company execute three promissory notes, one for one thousand dollars ($1,000), dated May 27, 1904, payable on or before one month after date; one for one thousand dollars ($1,000), dated May 27, 1904, payable on or before two months after date; one for three thousand dollars ($3,000), dated May 27, 1904, payable on or before one year after date, each of said notes to bear interest at

the rate of six per cent. per annum, and to be made payable at the Detroit Savings Bank; and, as collateral to secure the payment of said notes, the said company executes a chattel mortgage covering its tools, machinery and fixtures, and that E. C. Clark, as president of said company, and A. A. Bissell, as secretary of said company, are hereby authorized to execute the aforesaid notes and chattel mortgage of said corporation."

This was followed by another resolution providing:

"The said stock purchased from Messrs. Wells be issued to E. C. Clark in consideration of his personally indorsing the notes of the corporation given to said W. S. Wells in payment of the aforesaid stock, and that the said E. C. Clark disposing of the said stock to himself, or others, that the proper officers issue the stock to the purchaser, or purchasers of the same."

On May 28th, at a meeting of the directors, Messrs. W. S. and H. J. Wells transferred the 50 shares to E. C. Clark as treasurer. The corporation, through its proper officers, executed to W. S. Wells three promissory notes aggregating $5,000, and executed a chattel mortgage to him to secure their payment. Wells then resigned as president and director of the corporation; his resignation was accepted. Mr. Clark transferred a share of stock to Mr. Bissell who was elected a director. Mr. H. J. Wells also resigned as vice president, secretary, and director. The resignation was accepted, and one William C. Manchester, to whom one share of stock had been transferred, was elected a director. Mr. Bissell was elected secretary.

Subsequently Clark and his associates reorganized the company under the name of the E. C. Clark Machine Company. Payments amounting to about $1,900 were made to Mr. Wells upon the notes. On December 1, 1904, the complainants, Minnie Clark and Chauncey R. Clark, filed their bill of complaint against defendants E. C. Clark Machine Company, Ernest C. Clark, and William S. and Harvey J. Wells, alleging that they were creditors of said company and were so prior to May 27, 1904. They allege that the mortgage is void as to them, existing creditors.

The Wellses answered and filed a cross-bill denying the indebtedness and setting up in full the transactions between the parties; prayed for a foreclosure and for the appointment of a receiver. The complainants made no answer to the cross-bill. Subsequently one John L. Murphy and other creditors filed a petition to intervene. The petition was granted. They appeared upon the hearing without further pleadings.

The Detroit Trust Company was appointed receiver December 12, 1904. On March 31, 1905, the company was adjudicated a bankrupt and the trust company appointed trustee on September 28, 1905, and was duly substituted in this case for the E. C. Clark Machine Company.

On September 2, 1904, Mr. Murphy became interested in the company and had an office in the office of the Clark plant. On October 1, 1904, he and Messrs. Bryant and Allen entered into a contract with Mr. Clark to buy 60 shares of the stock of the company which included the stock which had been formerly owned by Mr. Wells. This agreement recited that the property of the corporation was subject to the mortgage to Mr. Wells for $3,600, and that it was otherwise free of any incumbrance. The records of the company show that at a meeting of the directors, held October 1, 1904, Mr. John L. Murphy was elected a director in place of Mr. Manchester, resigned, and also treasurer of the company in place of E. C. Clark, resigned, and Robert C. Sheehan was elected director and secretary in place of A. A. Bissell, resigned. He afterwards acted as such. Mr. Murphy claims to have loaned the company $4,452. The defendant Wells claims that he purchased the stock of the company with this money. Mr. Henry W. Wells testified that Mr. Clark, the bookkeeper under Mr. Murphy, told him that Mr. Clark informed witness that he had sold out to Murphy and others. Immediately thereafter witness went to see Sheehan and Murphy, and Murphy told him that he (Murphy) had taken over that plant, and was operating it under a

different arrangement, and Sheehan verified the statement.   Mr. William Wells also testified that about the same time Murphy told him that the Clarks were not in the concern, and that it belonged to him.   The case was heard in open court and decree entered in favor of the defendants Wells.

GRANT, C. J. (*after stating the facts*).   We think that Mr. Wells sold his stock to the corporation and not to Mr. Clark individually.   Mr. Wells had invested in the corporation $5,000, receiving therefor five thousand par value of the stock fully paid.   He acted in entire good faith, and there is an entire absence of evidence showing any intent on the part of the stockholders to defraud creditors.   The only evidence of any existing indebtedness at that time is the testimony of Harvey J. Wells, as follows:

" We might have been owing a little money at that time; I could not give you exactly the amount.   I could approximately, somewhere within $300." .

No then existing creditors, if there were any, are now complaining.   The claim of complainants Minnie and Chauncey R. Clark is eliminated from the case.   The cross-bill denied the validity of their debt.   They did not answer the cross-bill, and the order pro confesso admits the allegations to be true.   They do not, therefore, now stand in this suit as creditors.   The assets of the corporation were worth about $9,000.   All the creditors now complaining are subsequent creditors, who gave credit with the mortgage on file in the proper office.   The stockholders are not in position to complain, for they were all willing parties to the transaction and are therefore estopped to deny its validity.   *Solomon Solar Salt Co.* v. *Barber*, 58 Kan. 419; *Butterworth & Lowe* v. *Milling Co.*, 115 Mich. 1.

The transaction as to all parties then having any interest in the corporation or its assets was entirely valid.   The interveners, subsequent creditors, while conceding that the record of the mortgage is constructive notice to

them of its existence, insist that it was not notice to them that the assets of the company had been used to purchase some of the capital stock, and they insist that such use of the funds was void as to subsequent creditors. It is not correct to say that creditors have suffered a loss of the capital stock. The stock here involved was fully paid up. It was not liable to assessment. Its surrender to the company did not diminish the security of creditors. The use of the funds of the corporation to pay for the stock diminished its assets which would be as injurious to creditors as would be the purchase of the assessable stock of a stockholder. If the law prohibits one transaction it prohibits also the other, as the same diminution of the assets of the corporation results in each case.

The first important question to determine is the relation in which Mr. Murphy stands to the corporation. He insists that he put $4,452 into the corporation as a creditor, while Mr. Wells insists that he put it in as purchaser of his stock. No stock was issued to Mr. Murphy, but that was not essential to constitute him a stockholder. He admits his intention to become a stockholder, but denies that that intention was consummated by actual purchase. He was elected a director on October 1st, and also treasurer. His friend Sheehan was also elected a director and secretary at the same time. Mr. Murphy from that time controlled the affairs of the corporation. His method of dealing with it appears from the fact that he immediately caused the note of the company to be given to his particular friend, Mr. Allen, for $1,800, when Allen had not delivered the goods for which the note was given. Mr. Murphy testified:

"After I got in as treasurer Allen got his note for $1,800 at a crack."

It appears that the property thus contracted for has not yet been delivered. Murphy continued in the control of the company until this litigation began and a receiver was appointed by the court. Mr. Wells' stock which he

sold to the corporation was assigned to Mr. Clark and the assignment authorized him to dispose of it to himself or others. Under the law Mr. Murphy could not be a director without being a stockholder. He knew this. He thus held himself out as a bona fide stockholder and a director. His mouth ought now to be closed from asserting that he is not. He testified that his advance on October 8th of $2,000 to Clark was "in view of my taking an interest in that business with others." That language is susceptible of no other construction than that he paid that $2,000 for the purpose of making himself a stockholder. He was then a director and nearly the entire of his "advances," as he calls them, were made while he was a director, and while he held himself out as a stockholder. He told Harvey and William Wells on September 2d that he (Murphy) had taken over their plant and was operating it under a different arrangement, and Mr. Sheehan said the same thing. Mr. Harvey Wells also testified that Mr. Clark told him in September that he had "sold out to Murphy and Sheehan and a couple of other Canucks." We believe their statements. At that time Mr. Murphy was in charge of the office of the corporation and managing its affairs. The contract of October 1st included all the stock which had been issued; it did not include unissued stock. Mr. Murphy's expressed intention to be a stockholder, his holding himself out as such, his becoming a director knowing that he could not be one unless he was a stockholder, his payment of $2,000 in view of an interest in the business, his control and management of the corporate affairs, his statements to the Wellses, the fact that Mr. Clark had nothing to do with the management of the corporation after Murphy's advent into it, and that he was not called as a witness by him, point, in our judgment, to but one conclusion, and that is that Mr. Murphy was a stockholder. Money paid towards the purchase of stock cannot be converted into a loan to the detriment of other interested parties. Having found that he was a stockholder, the remaining ques-

tion is, How much and whose stock did he buy? As above stated, the contract of purchase covered all the issued stock. The intention of Murphy and his associates was to obtain substantially the entire stock of. the corporation. Simultaneously with this contract of purchase, and evidently in furtherance thereof, Murphy and Sheehan were elected directors and respectively treasurer and secretary, and Mr. Clark stepped out.

It is immaterial whether Mr. Murphy paid his money into the treasury of the company in furtherance of the contract of October 1st, or whether that was abandoned and he paid it for himself. While there is no express showing what particular stock Mr. Murphy paid his money to purchase, a court of equity will apply it in accordance with the principles of justice and equity. As above stated, Mr. Wells acted in good faith. There was no one in existence at that time to be defrauded. Mr. Clark, to whom the stock was assigned for the company, was authorized to sell it. We will apply the payments to this stock, and will hold that this purchase was valid in so far as he paid for it, viz., to the extent of $4,452. Mr. Murphy paid this money to the corporation with full knowledge of the transaction between Mr. Wells and the corporation. He had the corporate books before him where the entire transaction was in good faith recorded.

We are compelled to hold that the assessable stock and the assets of a corporation constitute a trust fund, not only for the benefit of existing, but also for future, creditors (*American Steel & Wire Co.* v. *Eddy*, 130 Mich. 266; *Peninsular Savings Bank* v. *Stove Polish Co.*, 105 Mich. 535; *Upton* v. *Tribilcock*, 91 U. S. 45), and that the assets of a corporation cannot be used by it in the purchase of its outstanding stock to the exclusion of subsequent creditors.

It follows from our conclusion, that the mortgage is invalid to the extent of $548, which was included in the sale to the corporation and has not been resold. It is apparent under the record as it now stands that the assets will

be more than sufficient to pay the debts.    Should this prove to be the case Mr. Wells will be entitled to receive out of the surplus sufficient to pay him this amount.    The decree will be modified in accordance with this opinion. Neither party will recover costs.

BLAIR, OSTRANDER, HOOKER, MOORE, CARPENTER, and McALVAY, JJ., concurred.    MONTGOMERY, J., did not sit.