HERBERT SMALL, Suing on Behalf of Himself and Others, Appellant and Respondent, *v.* FRANCIS DE C. SULLIVAN et al., Respondents and Appellants.

Pleading — corporation — directors — attack upon affirmative defense enables questioning of sufficiency of complaint — action by bondholder against directors of corporation for fraudulently converting corporate funds to their own use — allegations sufficiently setting forth cause of action — compliance with forms of law will not prevent a recovery for fraud — defense that trust agreement contained a " no recourse " clause insufficient — statement in . defense that defendants acted in good faith adds nothing to denial.

1. An attack upon an affirmative defense enables the defendant to question the sufficiency of the complaint.

2. A complaint in an action against directors of a corporation by a bondholder, on behalf of himself and others similarly situated, which alleges that the trust mortgage issued by the corporation and which was security for their bonds has been foreclosed, resulting in a large deficiency, by reason of which the amount due the plaintiff and others has not been paid in full, and which further alleges that at a time when the capital stock of the corporation was heavily impaired, but it still possessed substantial assets, the defendants consolidated the corporation with another that had but nominal assets and fixed the capital of the new corporation at a figure which showed a surplus of about two million dollars which they proceeded to distribute amongst themselves as a dividend upon stock held by them in the new company and that the defendants knew all the facts and consolidated the two companies for the purpose of wrongfully and fraudulently taking assets which should have been applied upon outstanding bonds and distributing them among themselves, states a cause of action.

3. A contention that the consolidation was made under the Business Corporations Law (Cons. Laws, ch. 4, § 7) and was authorized by that statute and as the forms of the statute have been complied with, the law will not look beyond these to the cause, reason or effect of the consolidation, cannot be sustained. Compliance with forms of law does not amount to absolution for fraud and a court of equity will look beyond the forms to the actual facts and compel restitution.

4. A defense that by a clause in the trust agreement, referred to in the bonds, it is provided that no recourse shall be had upon any bonds against any incorporator, stockholder, officer or director of the company or any successor corporation, is insufficient and should be stricken out. The clause did not relate to future fraudulent acts of the directors. They could not willfully and fraudulently destroy or convert the property held as security for these bonds, whether it was pledged to the trustee or was the general assets of the corporation, and then plead that they were protected by an agreement that they should not be liable for their acts.

5. Nor does the statement in the defense that the defendants acted in good faith add anything to their denial. The plaintiff must prove bad faith, amounting to fraud, intentional acts done for the purpose alleged in the complaint. The defendants by the general denial have met these allegations and can prove their good faith or lack of knowledge or absence of any other element which the plaintiff must prove to establish fraud.

*Small* v. *Sullivan*, 218 App. Div. 612, modified.

(Argued May 4, 1927; decided May 31, 1927.)

CROSS-APPEALS, by permission, from orders of the Appellate Division of the Supreme Court in the first judicial department, entered December 17, 1926, which modified and affirmed as modified orders of Special Term striking certain defenses from the answer. The following questions were certified:

" 1. Is the defense in the various answers based upon the ' no recourse ' clause in the trust deed sufficient in law upon the face thereof?

" 2. Are the second, third, fourth, fifth, sixth, seventh and eighth defenses contained in the answer of the defendant Sullivan et al., sufficient in law?

" 3. Are the second, third, fourth, fifth, sixth, seventh,

eighth and ninth defenses contained in the answer of the defendants Eleanor Robson Belmont and Morgan Belmont, as executors, etc., of August Belmont, deceased, sufficient in law?

" 4. Are the first, second, fourth, fifth, sixth, seventh, eighth, ninth, eleventh and twelfth defenses contained in the answer of defendant Central Union Trust Company of New York et al., sufficient in law?

" 5. Are the second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth and eleventh defenses contained in the answer of the defendant Farmers Loan and Trust Company as surviving executor of the estate of Edward R. Bacon, deceased, sufficient in law? "

*Gustavus A. Rogers, Abraham Benedict* and *Eugene W. Small* for plaintiff, appellant and respondent. The " no recourse " provision in the deed of trust is not a defense. (*Swancoat* v. *Remsen,* 78 Fed. Rep. 592; 3 Williston on Contracts, §§ 1750, 1751; *Matter of Oxford Bldg. & Invest. Soc., Ltd.,* L. R. 34 Ch. D. 502; *Babbitt* v. *Read,* 215 Fed. Rep. 395; 236 Fed. Rep. 42; *Marfield* v. *Cincinnati D. & T. T. Co.,* 111 Ohio St. 139; *Grady* v. *Graham,* 64 Wash. 436; *Industrial & General Trust, Ltd.,* v. *Tod,* 180 N. Y. 215; *MacDonnell* v. *L. T. & S. D. Co.,* 193 N. Y. 92; *Greene* v. *Walton,* 59 Hun, 102.) Where an illegal act, necessarily fraudulent, is perpetrated, allegations of good faith and lack of fraud state no defense. (*Bartlett* v. *Drew,* 57 N. Y. 587; *Hurd* v. *N. Y., etc., Steam Laundry Co.,* 167 N. Y. 89; *Darcy* v. *Brooklyn & N. Y. Ferry Co.,* 127 App. Div. 167; 196 N. Y. 99; *Trotter* v. *Lisman,* 209 N. Y. 174; *Hutchinson* v. *Stadler,* 85 App. Div. 424; *Cottrell* v. *Albany Card & Paper Co.,* 142 App. Div. 148; *Northern Pacific Ry.* v. *Boyd,* 228 U. S. 482; *Kansas City So. Ry.* v. *Guardian Trust Co.,* 240 U. S. 166; *Clark* v. *Bankers Trust Co.,* 99 Misc. Rep. 300; *Osgood* v. *Laytin,* 37 How. Pr. 63; 3 Keyes, 521.) The complaint is sufficient. (*Jones* v. *Missouri-Edison Electric*

*Co.,* 144 Fed. Rep. 765; 199 Fed. Rep. 64; 203 Fed. Rep. 945; *Theis* v. *Durr,* 125 Wis. 651; *Schwab* v. *Potter Co.,* 194 N. Y. 409; *Kavanaugh* v. *Kavanaugh Knitting Co.,* 226 N. Y. 185; *McCaskill Co.* v. *U. S.,* 216 U. S. 504; *Goss & Co.* v. *Goss,* 147 App. Div. 698; 207 N. Y. 742; *Peterson* v. *East River Land Co.,* 224 N. Y. 674; *Matter of Utica Nat. Brewing Co.,* 154 N. Y. 268.)

*De Lancey Nicoll* and *J. Tufton Mason* for W. Leon Pepperman et al., defendants, respondents and appellants. The complaint is insufficient. It states no cause of action. (*Baxter* v. *McDonnell,* 154 N. Y. 432; 155 N. Y. 83; *Title Guarantee & Trust Co.* v. *City of N. Y.,* 205 N. Y. 496; *Manson* v. *Curtis,* 223 N. Y. 313; *Ansorge* v. *Kane,* 244 N. Y. 395; *Schieffelin* v. *Hylan,* 125 Misc. Rep. 264; *People* v. *Equitable Life Assurance Society,* 124 App. Div. 714; *Schmid* v. *Neuberger,* 174 App. Div. 670; *Paper Co.* v. *Prankard,* 204 App. Div. 83; *Nauss* v. *Nauss Brothers Co.,* 195 App. Div. 318; *Cass* v. *Realty Securities Co.,* 148 App. Div. 96; 206 N. Y. 649; *Bankers Trust Co.* v. *Dietz Co.,* 157 App. Div. 586.) The question " Is the defense based upon the ' no recourse ' clause in the trust deed sufficient in law upon the face thereof? " should be answered in the affirmative. (*Babbitt* v. *Read,* 215 Fed. Rep. 395; 236 Fed. Rep. 42; *Marfield* v. *Cincinnati D. & T. T. Co.,* 111 Ohio St. 139; *Carnahan* v. *Campbell,* 158 Ind. 226; *Bush* v. *Robinson,* 95 Ky. 492; *Fidelity Trust Co.* v. *Washington-Oregon Corp.,* 217 Fed. Rep. 588; *Grady* v. *Graham,* 116 Pac. Rep. 1098; *Kohn* v. *Sacramento Electric Co.,* 168 Cal. 1; *Callanan* v. *Windsor,* 78 Iowa, 193; *Basshor* v. *Forbes,* 36 Ind. 154; *Brown* v. *Eastern Slate Co.,* 134 Mass. 590; *French* v. *Leschemaker,* 24 Cal. 518.)

*Martin A. Schenck* and *Joseph S. Auerbach* for Eleanor Robson Belmont et al., as executors of August Belmont, deceased, defendants, respondents and appellants. The

complaint fails to set forth facts sufficient to constitute a cause of action and should be dismissed. (*Baxter* v. *McDonnell*, 154 N. Y. 432; *Title Guarantee & Trust Co.* v. *City of N. Y.*, 205 N. Y. 496; *O'Reilly* v. *City of Kingston*, 114 N. Y. 439; *Wood* v. *Amory*, 105 N. Y. 278; *Knapp* v. *City of Brooklyn*, 97 N. Y. 520; *Moss* v. *Geddes*, 28 Misc. Rep. 291; *Marshall* v. *Thompson Feature Service*, 216 App. Div. 428; *Knowles* v. *City of New York*, 176 N. Y. 430; *Matter of Interborough Corp.*, 277 Fed. Rep. 455; *Hoadley* v. *Hoadley*, 244 N. Y. 424; *Campbell* v. *City of New York*, 244 N. Y. 317; *Messersmith* v. *American Fed. Co.*, 232 N. Y. 161; *People* v. *Noblett*, 244 N. Y. 355; *Auburn & Cato Plank Road Co.* v. *Douglas*, 9 N. Y. 444; *Morris* v. *Tuthill*, 72 N. Y. 575; *Kiff* v. *Youmans*, 86 N. Y. 324; *Carroll Building Corp.* v. *Greenburg Plumbing Supplies, Inc.*, 216 App. Div. 268; *Shadford* v. *Detroit, Y. & A. A. Ry.*, 89 N. W. Rep. 960; *Leavenworth County* v. *Chicago, Rock Island & Pacific R. R. Co.*, 134 U. S. 688; *Oregon-Washington R. R. & N. Co.* v. *Wilkinson*, 188 Fed. Rep. 363; *Atchison, Topeka & Sante Fe R. R. Co.* v. *Board of Commissioners*, 51 Kans. 617; *Rice* v. *National Bank of Commonwealth*, 126 Mass. 303; *Terhune* v. *Potts*, 47 N. J. Law, 218.) The first affirmative defense, based upon the " no recourse " clause of the trust agreement, is a good defense. (*Hotchkiss* v. *City of Binghamton*, 211 N. Y. 279; *Matter of Cooper*, 93 N. Y. 507; *Monowitz* v. *Brackenridge*, 186 N. Y. Supp. 686; 195 App. Div. 929; *Babbitt* v. *Read*, 215 Fed. Rep. 395; 236 Fed. Rep. 42; *Brown* v. *Eastern Slate Co.*, 134 Mass. 590; *Carnahan* v. *Campbell*, 158 Ind. 226; *Marfield* v. *Traction Co.*, 111 Ohio St. 139; *Crosthwaite* v. *Moline Plow Co.*, 298 Fed. Rep. 466; *United States* v. *Stanford*, 70 Fed. Rep. 346; 161 U. S. 412; *Fidelity Trust Co.* v. *Washington-Oregon Corp.*, 217 Fed. Rep. 588; *Basshor & Co.* v. *Forbes*, 36 Md. 154.)

*M'Cready Sykes* and *William A. W. Stewart* for Francis De C. Sullivan, defendant, respondent and appellant.

*William R. Carlisle* and *Allen Wardwell* for Central Union Trust Company of New York et al., defendants, respondents and appellants.

*Edward M. Cameron, Jr.,* and *George S. Mittendorf* for Farmers' Loan and Trust Company, as executor of Edward R. Bacon, deceased, defendant, respondent and appellant.

CRANE, J. These appeals come here upon seven questions certified by the Appellate Division relating to the sufficiency of the defenses set up in the answers. The main argument, however, has centered about the sufficiency of the complaint which apparently was passed over by counsel in the courts below. The Appellate Division in its opinion says: " As defendants have decided to reserve for the present all questions as to the sufficiency of the complaint, we assume that it states a cause of action of the general character indicated above." However, under the rule that an attack upon an affirmative defense enables the defendant to question the sufficiency of the complaint (*Baxter* v. *McDonnell,* 154 N. Y. 432; *Manson* v. *Curtis,* 223 N. Y. 313, 319), the defendants in this court have raised this question and we must dispose of it before dealing with the answers.

The complaint alleges a cause of action against directors of the Interborough-Metropolitan Company and the Interborough Consolidated Corporation for fraudulently converting the funds of the corporations to their own use and advantage, and to the injury of the plaintiff, a bondholder, and others similarly situated. The Interborough-Metropolitan Company was a domestic corporation with an authorized capital of $155,000,000. At the times herein mentioned there was issued and outstanding $45,740,000 of preferred, and $93,262,192 of common stock. It had issued and outstanding $67,825,000 of bonds payable August 1, 1956, bearing interest from

April 1, 1906. The Metropolitan Company was a holding company having large blocks of stock in the Interborough Rapid Transit Company, the Metropolitan Street Railway Company and the Metropolitan Securities Company. The latter two companies proved a loss. The Interborough Rapid Transit Company paid dividends, and the Interborough-Metropolitan Company received the dividends on its stock which it applied to the payment of the interest on its outstanding bonds. These bonds were issued under a trust agreement entered into on or about March 5, 1906, between the company and the Windsor Trust Company, a domestic corporation, as trustee. So far as the allegations in this complaint are concerned, the Metropolitan Company held one class of securities which were valuable and paid an income. This was the stock of the Interborough Rapid Transit Company. The dividends from this stock were sufficient to pay the interest on the bonds, and to accumulate each year a substantial amount to meet the principal of the bonds when due.

The capital of the Interborough-Metropolitan Company had become impaired to the extent of $80,000,000. Its capital stock, both common and preferred, amounted to $139,200,192 which plus the property received on the sale of the bonds made a total value of its property, or supposed property, of $206,827,192. The complaint alleges that its net assets were $52,559,948.54. To arrive at the net assets, it must, of course, be assumed that funds were set aside to pay the bonds. Therefore, adding this figure of $67,825,000 to the net assets, makes a total of $120,384,397.54, all the assets which the corporation had to offset its capital stock and bonded indebtedness. This left over $86,000,000 impairment of its capital, if we take the statements and allegations in the complaint. The complaint alleges that prior to the consolidation hereafter mentioned, the Interborough-Metropolitan Company had suffered an impairment of its capital to an extent upwards of $80,000,000.

This was the condition which confronted the directors of the Interborough-Metropolitan Company. As a holding company it had sustained large losses through its ownership of the stock of the Metropolitan Street Railway Company and the Metropolitan Securities Company. It held the paying stock of the Interborough Rapid Transit Company, and this asset according to the allegations in the complaint was necessary to meet the interest and the principal on its trusteed bonds.

Under these circumstances, the directors were also faced with two provisions of law with which they are presumed to have been familiar. Section 28 of the Stock Corporation Law (Laws of 1909, chap. 61; Cons. Laws, ch. 59) provided: "The directors of a stock corporation shall not make dividends, except from the surplus profits arising from the business of such corporation, nor divide, withdraw or in any way pay to the stockholders or any of them, any part of the capital of such corporation, or reduce its capital stock, except as authorized by law." The directors of the Interborough Company had not declared dividends on its preferred stock for over seven years.

The capital stock of a corporation is intended as a fund for the ultimate security and payment of all its creditors, both present and future. A corporation has no right to declare dividends with a substantially impaired capital. The term "capital stock," in these provisions prohibiting the directors of a corporation from making dividends except from surplus profits of a corporation, or from dividing, withdrawing or in any way paying to the stockholders any part of the capital stock of the company, means the property of the corporation contributed by the stockholders or otherwise obtained to the extent required by its charter. The object of the provision was to prevent a withdrawal of the property which would reduce the value of its assets below the sum limited for its capital in its charter. When the property of the

corporation exceeds that limit, the excess is surplus,
which may be divided among the stockholders. (*Williams*
v. *Western Union Telegraph Co.*, 93 N. Y. 162; *Cottrell* v.
*Albany Card & Paper Mfg. Co.*, 142 App. Div. 148.)

The complaint alleges the impairment of the capital
stock of the Interborough-Metropolitan Company; the
compliance of the directors with the law in refusing to pay
dividends while the capital was impaired, and it then
further alleges the facts which show how the directors
got around these provisions of the law for the purpose of
paying dividends to themselves instead of keeping the
income as security for the bond creditors.

There was a domestic company, so the complaint
alleges, known as the Financing and Holding Corpora-
tion, not engaged in business, with assets of $550 in cash.
The directors determined to consolidate the Interborough-
Metropolitan Company of $139,000,000 outstanding
capital stock with this company under the name of the
Interborough Consolidated Corporation. The consolida-
tion was made, the new company having an authorized
capital of $50,403,634.60. Consolidation was carried out
under the forms prescribed by section 7 of the Business Cor-
porations Law (Cons. Laws, ch. 4), which now provides and
then provided that any two or more corporations organized
under the laws of this State for the purpose of carrying on
any kind of business of the same or of a similar nature may
consolidate into a single corporation. The amount of the
capital stock which must be fixed according to the agree-
ment of consolidation is not to be larger in amount than
the fair aggregate value of the property franchises and
rights of such corporations. This consolidation statute
did not provide the minimum below which the capital
stock of the consolidated company could not be placed.
The companies and the directors of the companies fixed
on this figure of $50,000,000 which was not more than
the net assets received from the two companies, which
amounted to $52,559,397.54 from the Interborough-

Metropolitan Company, and $550 apparently in cash from the Finance and Holding Corporation. This consolidated company, therefore, had about $2,000,000 more assets than capital stock — a surplus. This consolidation amounted in effect to a reduction in the capital stock of the Interborough-Metropolitan Company. The reduction could not be accomplished directly, for it was prohibited by section 62 of the Stock Corporation Law (Laws of 1909, chap. 61), which at that time read as follows: "Any domestic corporation may increase or reduce its capital stock in the manner herein provided, but not above the maximum or below the minimum, if any, prescribed by general law governing corporations formed for similar purposes * * * If reduced, the amount of its debts and liabilities shall not exceed the amount of its reduced capital." According to the figures above given, the debts and liabilities of the Interborough-Metropolitan Company did exceed the amount of the proposed reduced capital, and no reduction, such as proposed, could be made. However, the directors brought about a reduction under the consolidation statute which they now strongly urge was done in accordance with law, the terms of the statute, and, therefore, perfectly legal. As stated above, the new company, the Interborough Consolidated Corporation, with the same directors as those of the Interborough-Metropolitan Company and a few added who knew all the facts, received all the assets of the Interborough-Metropolitan Company, and also assumed under the law its debts and obligations. There was still outstanding and due from this new company, under the guidance, control and direction of the same directors the $67,000,000 bonds for which apparently the only security was the trust mortgage and the stock of the Interborough Rapid Transit Company, now turned over to the ownership of the consolidated company. What does the complaint allege that these directors did? Through the mere filing of papers these same men who had ceased to be

directors of the Interborough-Metropolitan Company had now become directors of the same property under a new name, the Interborough Consolidated Company, handling the same assets and charged with a duty to provide for the payment of the same debts. The complaint alleges that they immediately divided up this alleged surplus of $2,000,000 assets among themselves, took the income from the dividends on the Interborough Rapid Transit stock and diverted it from security for the bonds and interest, and distributed it among themselves as stockholders, in the form of dividends upon stock of the new Interborough Consolidated Corporation. The complaint alleges that these directors both of the Interborough-Metropolitan Company and the Interborough Consolidated Corporation who are parties to this action, knew all the facts and consolidated these companies for the very purpose of wrongfully and fraudulently taking the assets of the Interborough-Metropolitan Company which should have been applied upon its outstanding bonds and distributing it among themselves in the form of dividends of the Interborough Consolidated Corporation.

It is now said that if all the allegations in the complaint are true, yet the consolidation being authorized by the Business Corporations Law, prevents a recovery; that as the forms of the statute have been complied with, the law will not look beyond these to the cause, reason or even the effect of the consolidation; that by reason of these forms, directors may do indirectly what they cannot do directly; that the addition to the capital assets of $550 works such a transformation that the directors of a corporation charged with a duty of preserving its assets and income for the benefit of its creditors may divide these assets and income among themselves under the guise of dividends to the exclusion of the creditors. There are a few facts in the transaction which cannot be dis-

puted; some things were not transformed; they stand out as the main facts to be considered. The assets did not change; they were the same before, both in kind and in amount, as they were after consolidation; the directors did not change except by the addition of a few others who knew the facts. The only thing apparently which has changed under these allegations has been a corporate charter, and the alleged shifting of the duties and responsibilities of the directors.

I know of no forms of law, statutory or otherwise, which may not be used for the accomplishment of a fraud or for the illegal purposes of wrongly obtaining money, if people so desire to use them, and I know of no form of law or statute which will prevent a court of equity from seeking out the fraud, looking beyond the forms to the actual facts and compelling restitution. Compliance with forms of law does not amount to absolution for fraud. All of these corporation statutes have their legitimate purposes, but they cannot be used as a blind to pay dividends when there are no actual profits out of which to pay them.

What I have said here, of course must not be misunderstood. We are dealing merely with the allegations of the complaint and for the purpose of argument and discussion, assume them to be true in order to answer the defenses made to them. It must never be assumed by anybody who reads this opinion that we have said that such are' the facts or that the allegations 'are true, or that our words even carry such an intimation. We are dealing merely with pleadings, and pleadings are not proof. We are passing upon allegations which, if sufficient to make out a cause of action, still remain to be established by competent proof.

The complaint further alleges the reasons why this action is brought by the plaintiff as a bondholder. The trust mortgage which was security for these bonds was foreclosed by the trustee, resulting in a large deficiency.

The plaintiff received his proportionate part of the amount realized, but he and the other bondholders have not been paid in full. The Interborough Consolidated Corporation on or about March 28, 1919, was adjudicated a bankrupt and the plaintiff and the other bondholders received their proportionate part of the bankrupt's estate. All the estate of the bankrupt has been disposed of by the trustee. The liability of these directors of the Interborough-Metropolitan Company for their fraud would not constitute an asset of the Interborough Consolidated Corporation, at least it would not prevent the bondholders from pursuing the directors for their misfeasance as directors of the Metropolitan company.

We, therefore, think that the allegations of the complaint set forth a cause of action, and we now proceed to answer the certified questions. We agree with the disposition made by the Appellate Division of all of the defenses with the exception of one; the first question certified which relates to the second defense contained in the answer of the defendant Sullivan and others. In the answer this is designated as the first affirmative defense, but there seems to be no dispute among counsel or in the briefs that this first question relates to this so-called " no recourse defense." The answer sets forth that the bonds described in the complaint and held by the plaintiff were a part of a series of bonds issued by the Interborough-Metropolitan Company to the aggregate amount of $67,825,000, and secured by a certain collateral trust indenture under which there were pledged and placed in the possession of the trusteed securities, the value of which was largely in excess of the aggregate par amount of the bonds. The bonds, by appropriate words, referred to the trust agreement, which trust agreement contained this clause:

" No recourse under or upon any obligation, covenant or agreement of this indenture, or of any purchase money bond or coupon, or because of the creation of any indebted-

ness hereby secured, shall be had against any incorporator, stockholder, officer or director of the Company or any successor corporation, either directly or through the Company, by the enforcement of any assessment or by any legal or equitable proceeding by virtue of any statute or otherwise. This indenture and the purchase money bonds are solely corporate obligations, and no personal liability whatever shall attach to or be incurred by the incorporators, stockholders, officers or directors of the Company, or any successor corporation, or any of them, because of the incurring of the indebtedness hereby authorized, or under or by reason of any of the obligations, covenants or agreements contained in this indenture, or in any of the purchase money bonds or coupons, and any and all personal liability either at common law or in equity, or by statute or constitution, of every such stockholder, officer or director, is released and waived as a condition of and as part of the consideration for the execution of this indenture and the issue of the purchase money bonds."

The defendant further alleged in this defense that the consolidation with the Financing and Holding Company on June 1, 1915, was made in strict conformity with the statute, and that the defendants acted in good faith and without fraud in respect to said consolidation; that if there was any mistake, it was a mistake of law upon the part of these defendants.

The Appellate Division were of the opinion that this set forth a good defense. We take a contrary view. Without attempting to state the meaning and extent of this " no recourse clause," we are confident of one thing, that it did not and could not cover the future fraudulent acts of the directors. The complaint as we have indicated alleges a consolidation conceived and executed in fraud, and for the willful and intentional purpose of procuring the assets and income of the corporations. The consolidation was long after the making of the trust agreement.

The directors could not willfully and fraudulently destroy or convert the property held as security for these bonds, whether it was pledged to the trustee or was the general assets of the corporation, and then plead that they were protected by an agreement that they should not be liable for their acts. The agreement did not relate to such future acts.

Neither does the statement in the defense that the defendants acted in good faith add anything to their denial. The plaintiff must prove bad faith, amounting to fraud, intentional acts done for the purpose alleged in the complaint, as heretofore stated. The defendants by the general denial have met these allegations and can prove their good faith or lack of knowledge or absence of any other element which the plaintiff must prove to establish fraud. We, therefore, think that this answer is insufficient and should have been stricken out.

The orders of the Appellate Division and of the Special Term as thus modified should be affirmed, with costs to the plaintiff in all courts, and the questions certified answered in the negative.

LEHMAN, J. (dissenting). The complaint shows that during the years 1912, 1913, 1914 and 1915 the Interborough-Metropolitan Company received from dividends on stock of the Interborough Rapid Transit Company held by it an amount of money far in excess of the sum required for the payment of interest on the bonds of the Interborough-Metropolitan Company, and that the surplus was accumulating in its treasury. It had assets of more than $52,000,000 in value over and above its debts and obligations. It can hardly be said, therefore, that further accumulation of income in its treasury was reasonably required for the protection of its creditors. It had outstanding almost $50,000,000 par value of preferred stock. The corporation might not distribute as dividends the income which was accumulating in its treasury, for

that was forbidden by section 28 of the Stock Corporation Law (Cons. Laws, ch. 59) as long as its capital was impaired by losses previously suffered, to an amount of over $80,000,000. The corporation was, therefore, bound to allow its surplus income to accumulate in its treasury or to find some means by which it might surmount the obstacle in the way of its distribution among the stockholders.

The creditors of the corporation had no lien upon the moneys which were accumulating, or upon the capital of the corporation. The doctrine that the capital of a solvent corporation constitutes a trust fund for the payment of its creditors has been assailed by judicial and extra-judicial writers. (See Thompson on Corporations [2d ed.], section 3418.) "The officers of a corporation act in a fiduciary capacity in respect to its property in their hands, and may be called to an account for fraud or sometimes even mere mismanagement in respect thereto; but as between itself and its creditors the corporation is simply a debtor, and does not hold its property in trust, or subject to a lien in their favor, in any other sense than does an individual debtor." (*Hollins* v. *Brierfield Coal & Iron Co.,* 150 U. S. 371.) Doubtless for some purposes the trust fund doctrine will still be applied. (*Trotter* v. *Lisman,* 209 N. Y. 174.) It has never been applied so as to limit the right of the directors of the corporation to deal with the property of the corporation, while solvent, in any manner not forbidden by law nor in fraud of its creditors.

The trust fund doctrine need not, however, be invoked in order to furnish a creditor with a remedy for unlawful or fraudulent diversion of the assets of the corporation. So long as the capital stock of the corporation remained impaired by losses previously sustained, the corporation had no surplus profits which it could distribute as dividends. Declaration of dividends under such circumstances would constitute an unlawful diversion of the

corporate property for which the law would furnish redress to those injured. The Stock Corporation Law, however, provided that a corporation might reduce its capital. If the capital was reduced, then the corporation might lawfully distribute any surplus over the reduced capitalization. In other words, the law did not absolutely prohibit the distribution of the moneys then in the treasury of the corporation or the moneys which might thereafter be paid into the treasury; distribution was unlawful only so long as the capital stock of the corporation was larger than its assets. (*Strong* v. *Brooklyn Cross-Town R. R. Co.,* 93 N. Y. 426.) In this case, however, as Judge CRANE has pointed out, the corporation could not by reason of its outstanding bonds avail itself of the method provided by the Stock Corporation Law in the form it then existed for reduction of its capital stock.

The Business Corporations Law offered another method by which similar results might be achieved. Two or more corporations may merge their identity into a consolidated corporation (Sec. 7). The bondholders might not complain at lawful consolidation, for the deed of trust expressly permitted it. The capital stock of the new corporation which comes into existence through the merger need bear no relation to the capital stock of the original corporations. The directors entered into a consolidation agreement with the Financing and Holding Corporation which had assets of only $550 in cash, and the capital stock of the new corporation was fixed at a figure within the net value of its assets. The new corporation could declare dividends out of surplus profits as long as its own capital stock remained unimpaired.

It is not claimed that by the attempted consolidation a new corporation did not come into existence in which the identity of the old corporations was lost. It is not claimed that such new corporation might not ordinarily declare dividends out of surplus profits above its own capitaliza-

tion, but it is said that in this case the consolidation was only a form or subterfuge intended to accomplish an unlawful result, viz., the distribution of income received by a corporation while its capital was impaired. Undoubtedly the inference is clear that the consolidation of a corporation having net assets of $52,000,000 with a corporation with assets of $550 was only a form used to accomplish the distribution of corporate assets otherwise forbidden. It does not follow that the subsequent distribution was unlawful. It is true that the time has passed when the courts will permit an unlawful result to be achieved, even by means which are not themselves illegal. The law may not be circumvented by subterfuges and the courts will look behind the form to determine whether an act is inherently unlawful. Distinction must nevertheless be drawn between cases where a result is itself wrongful and unlawful regardless of the means by which it is accomplished, and cases where the wrong or illegality is inherent only in the means by which the result is attained. In the latter cases there is no evasion of the law where legal means are substituted for those which are prohibited.

Here there was no fraud on creditors or other inherent wrong in distribution of income by a corporation having net assets of $52,000,000 above its debts and obligations. Distribution in the form of dividends would, however, be illegal so long as the capital of the corporation was impaired by losses previously sustained. In contemplation of law such distribution would be made out of capital. On the other hand, as soon as the corporation's capital was no longer impaired, the distribution would become lawful. As the law now stands, a corporation situated as the Interborough-Metropolitan Company was in 1915, might lawfully reduce its capital to $50,000,000 or less and distribute its surplus. (Sections 36, 37 and 38 of the Stock Corporation Law.) As the law stood in 1915, a corporation so situated might not do so. It might, however, merge its identity in a new corporation with

smaller capital and thereby achieve the same result. Then the new corporation might lawfully declare dividends so long as such dividends did not result in impairment of the new capital. That was the course taken by the directors of the Interborough-Metropolitan Company in this case. True, the consolidation was made only because the machinery provided at that time for reduction of capital of a corporation which maintained its separate identity could not be used. It was not, however, unlawful at that time to achieve by the use of a more cumbersome method the result which to-day might lawfully be accomplished more directly.

For these reasons I think that the complaint fails to allege facts sufficient to constitute a cause of action against any of the defendants, and the judgment should be reversed.

CARDOZO, Ch. J., POUND, ANDREWS, KELLOGG and O'BRIEN, JJ., concur with CRANE, J.; LEHMAN, J., dissents in opinion.

Ordered accordingly.