New York Credit Men's Association, as Assignee for the Benefit of Creditors of Lido Beach Apparel, Inc., Plaintiff, *v.* Philip Harris, Defendant.

Supreme Court, Special Term, New York County, April 10, 1939.

*Feiring & Bernstein* [*Irving J. Seaver* of counsel], for the plaintiff.

*Louis Engelberg*, for the defendant.

ROSENMAN, J. The action is brought by an assignee of a corporation for the benefit of creditors, against the defendant as a former officer, director and stockholder of the assignor, for his claimed illegal participation in the alleged waste and dissipation of the corporate assets. The complaint sets out five causes of action, each arising out of a transaction in which the assets of the assignor corporation were allegedly depleted to the extent of $4,500. The first and fifth causes of action are presumably brought under subdivisions 1, 2 and 5 of section 60 of the General Corporation Law; the second, third and fourth causes are brought under section 58 of the Stock Corporation Law.

The second cause of action alleges, in substance, that the assignor assigned for the benefit of creditors on January 18, 1938; that defendant was a director, officer and stockholder of the assignor; and that on April 21, 1937, defendant, as such director and officer, caused and permitted the assignor corporation to repurchase from the defendant 100 shares of its capital stock in exchange for assets amounting to $4,500, at a time when the corporation had no surplus; that such transfer of assets constituted a depletion of the capital of the assignor; that as a result thereof the corporate assets are insufficient to pay the creditors thereof in full, " and a sum more than equal to the amount of said payment " will still be owing to them after applying the remaining corporate assets to its debts; that the defendant was present at the directors' meeting when the payment was authorized and did not cause his dissent to be entered on the minutes thereof; that the value of the corporate assets remaining after such payment " was not equal to the aggregate amount of its debts and liabilities including capital stock."

The third cause of action is similarly pleaded, except that instead of pleading the transaction specifically as a repurchase of stock, the plaintiff generally alleges that defendant permitted without dissent, and caused, the corporation to dissipate $4,500 of its assets not out of surplus. The proof, of course, may show that this alleged illegal distribution of assets is actually the transaction involving the repurchase of the stock, so that this cause would be repetitious

of that immediately preceding it. That is not apparent, however, on this motion.

The fourth cause of action has allegations generally similar to those of the second and third causes, but it is founded upon an alleged stockholder's liability, rather than a director's. It is there alleged, in substance, that a distribution of $4,500 of the corporate capital assets was made by the directors " to defendant, a stockholder of said corporation; " that the defendant, as a stockholder, " had notice and knowledge that such transfer and distribution were not made out of surplus but were a withdrawal from and transfer and distribution to him of part of its capital," and that, therefore, defendant became obligated to repay and reimburse the the corporate assignee to that amount. The legal basis for this cause of action is the case of *Quintal* v. *Adler* (146 Misc. 300; affd., 239 App. Div. 775; affd., 264 N. Y. 452). In that case the complaint was dismissed for its failure to allege (1) that the illegal payments rendered the corporation insolvent, and (2) that the stockholders did not receive the payments in good faith. Here, however, there are the required allegations that, as a result of the transaction, there remain insufficient assets to pay the creditors in full and that the defendant had notice and knowledge that the distribution was made, not out of surplus, but out of the capital of the corporation.

The defendant's contentions with respect to all the causes of action are that " while the transaction complained of took place some nine months prior to the making of the assignment to the plaintiff, it is not alleged * * * that so much as a single creditor of the assignor, at the time of the transaction complained of, was injured one iota by this transaction; nor has it been alleged and shown, in the complaint or in the bill of particulars that there were not sufficient assets after the transaction complained of, to pay all the then existing creditors of the assignor."

The question is thus presented with respect to the second, third and fourth causes of action, brought under section 58 of the Stock Corporation Law, whether it was necessary for the plaintiff to allege that at the time of the alleged wrongful acts there were creditors of the assignor corporation who remain creditors at the commencement of the action.

Section 58 of the Stock Corporation Law read as follows at the time of the acts forming the basis of this action (Laws of 1923, chap. 787):

" § 58. Dividends. No stock corporation shall declare or pay any dividend which shall impair its capital or capital stock, nor while its capital or capital stock is impaired, nor shall any such corporation declare or pay any dividend or make any distribution

of assets to any of its stockholders, whether upon a reduction of the number of its shares or of its capital or capital stock, unless the value of its assets remaining after the payment of such dividend, or after such distribution of assets, as the case may be, shall be at least equal to the aggregate amount of its debts and liabilities including capital or capital stock as the case may be. In case any such dividend shall be paid, or any such distribution of assets made, the directors in whose administration the same shall have been declared or made, except those who may have caused their dissent therefrom to be entered upon the minutes of the meetings of directors at the time or who were not present when such action was taken, shall be liable jointly and severally to such corporation and to the creditors thereof to the full amount of any loss sustained by such corporation or by its creditors respectively by reason of such dividend or distribution."

While there has not always been complete unanimity among the courts as to whether subsequent creditors, *i. e.*, creditors whose claim arose after the act, can complain of a depletion of capital assets of a corporation, it is now well settled in this State, at least, that they can. It follows, therefore, that it is not necessary to allege that there were creditors in existence at the time of the act of depletion.

It was said in the case of *Christianssand* v. *Federal S. S. Corp.* (121 Misc. 627, 628), which was an action under section 28 of the Stock Corporation Law (the immediate predecessor to the present section 58), brought by a creditor whose claim arose subsequent to the diminution of the capital of the corporation: "While there is great conflict in the cases, reason and the weight of authority favor plaintiffs' contention that a *subsequent* creditor can rely upon the assumption that the capital of a corporation has not been depleted by illegal conduct of the directors. The Legislature requires a corporation which puts a par value on its shares to obtain payment of issued capital in cash or its equivalent. The corporation then has a specified amount of capital, which the Legislature intended as a margin of safety for creditors. Subsequent creditors should not be defrauded by the secret illegal impairment of this margin."

The power of a corporation to repurchase its own stock has been limited in this State by statute also. (Penal Law, § 664.) Only surplus may be used for such repurchase. The creditors, present and subsequent, may still rely upon the fact that "the assets constitute a trust fund for creditors." (*Cross* v. *Beguelin*, 226 App. Div. 349, 350, 351; affd., 252 N. Y. 262, 265.) This case held, however, that a subsequent creditor *with knowledge* is not protected to the same extent as those without knowledge, since his knowledge of the depletion precludes any claim for protection.

In the case of *Matter of Fechheimer Fishel Co.* (212 Fed. 357) the Second Circuit held that "If a stockholder sells his stock to a corporation which issued it, he sells at his peril and assumes the risk of the consummation of the transaction without encroachment upon the funds which belong to the corporation in trust for the payment of its creditors" (p. 363). The court approved the holding in *Clark* v. *Clark Machine Co.* (151 Mich. 416; 115 N. W. 416) that "the assets of a corporation constituted a trust fund not only for the benefit of existing but also for future creditors, and that they could not be used in the purchase of outstanding stock to the exclusion of subsequent creditors" (p. 365); and the language used by Mr. Morawetz in his work on Corporations: "No verbiage can disguise the fact that a purchase by a corporation of shares in itself really amounts to a reduction of the company's assets * * *. The fact that such a transaction may not necessarily be injurious to any person is not a sufficient reason for supporting it. It is contrary to the fundamental agreement of the shareholders, and is condemned by the plainest dictates of sound policy" (p. 361).

Very recently the same Circuit Court of Appeals said: "The corporate stock of a corporation is a fund for the ultimate security of all its creditors both present and future. It, therefore, makes no difference whether the creditors existing at the time the contract for the sale of the stock was closed and the chattel mortgage was executed have since been paid off." (*Matter of Bay Ridge Inn*, 98 F. [2d] 85, 87.) In that action the stock was taken back in exchange for a chattel mortgage. The court held that under section 58 of the Stock Corporation Law, the transaction was invalid as to all creditors, both present and future.

In *Cottrell* v. *Albany Card & Paper Mfg. Co.* (142 App. Div. 148), a case involving the violation of section 28 (now section 58) of the Stock Corporation Law, the court said: "But the idea of the capital stock of a corporation being a fund for the benefit of its creditors seems to apply with equal force to future as well as to present creditors. If a wrong is done to its present creditors by secretly decreasing the total assets out of which payment of its debts could be enforced by them, no less a wrong is done to persons who subsequently become its creditors without notice of the depletion of such assets and who consequently will have a right to assume that the directors have not violated the express terms of the statute regarding unauthorized dividends" (p. 151).

This case was cited with approval in *Small* v. *Sullivan* (245 N. Y. 343, 350) (also involving section 28 of the Stock Corporation Law), where the court reiterates the rule: "The capital stock of a corporation is intended as a fund for the ultimate security and payment

of all its creditors, both present and future. A corporation has no right to declare dividends with a substantially impaired capital."

The one New York appellate authority directly opposed to the rule set forth (*Moses* v. *Soule*, 63 Misc. 203; affd., 136 App. Div. 904, which was an action under section 23 of the Stock Corporation Law, an earlier predecessor to the present section 58) is clearly the minority view.

Direct precedent that in an action under section 58 there need be no allegation in the complaint of existing creditors is found in *Quintal* v. *Greenstein* (142 Misc. 854, 855; affd., 236 App. Div. 719), where the court said: "The complaint does not say that there were creditors of the corporation in existence at the time the unlawful dividends were paid out who are still such creditors. * * * I am of opinion that in an action based solely upon section 58 of the Stock Corporation Law, it is not necessary to plead the existence at the time of creditors who are still creditors." (See, also, *Walker* v. *Man*, 142 Misc. 277, 283.)

The claim by defendant that section 58 does not apply because this action is not for an unlawful declaration of dividends, is invalid. That section is not limited to dividends.

Therefore the second, third and fourth causes of action are properly pleaded, and the motion is denied with respect to them.

The first and fifth causes of action are brought under section 60 of the General Corporation Law. The first cause alleges in substance that defendant, as a director and officer of the assignor corporation, "permitted and caused" said corporation, when there was no surplus, to purchase from defendant, as stockholder, 100 shares of its capital stock for which it paid in money or assets the sum of $4,500; that this payment "was not made out of surplus, but constituted a withdrawal from and depletion of the capital," all of which "was contrary to law and in violation of" defendant's duties as officer and director; and that as a result thereof there remain insufficient assets to pay the corporate creditors in full. The illegality alleged in the first cause of action is enunciated in section 664 of the Penal Law, which prohibits repurchase of corporate stock except from surplus. Participation in such illegality by defendant gives rise to an action under section 60 of the General Corporation Law. The fifth cause of action alleges, in substance, that the defendant, having "the majority interest in and full and complete control of the affairs and property of" the corporation, "caused and compelled the officers and directors" to pay to him corporate assets of the value of $4,500, for which the corporation received no consideration and which the defendant converted;

that such diversion was compelled by defendant and that he abstracted the same, leaving insufficient assets to pay the creditors in full. There is no allegation in this cause of action as in the first cause of action that the illegal diversion was from capital assets as distinguished from surplus assets. The plaintiff describes the cause of action in his brief as a " wrongful misappropriation and conversion of corporate assets."

The question raised by the defendant with respect to these two causes of action under section 60 of the General Corporation Law is the same as the question raised with respect to the other three causes of action under section 58 of the Stock Corporation Law, viz., must the complaint allege that there were creditors at the time of the alleged unlawful transaction who are still creditors?

The provisions of section 58 of the Stock Corporation Law are quite different from the provisions of section 60 of the General Corporation Law. Section 58 prohibits the payment of any dividend " which shall impair its capital or capital stock " and prohibits " any distribution of assets to any of its stockholders whether upon a reduction of the number of its shares, or of its capital or capital stock " except out of surplus. Section 60 of the General Corporation Law is not limited by its language to waste of *capital* or *capital stock* but is broad enough to include the wasting of *any* and *all* assets even out of surplus. The material paragraphs of section 60 of the General Corporation Law provide as follows:

" § 60. Action against officers of corporation for misconduct. An action may be brought against one or more of the directors or officers of a corporation to procure judgment for the following relief or any part thereof:

" 1. To compel the defendants to account for their official conduct, including any neglect of or failure to perform their duties, in the management and disposition of the funds and property, committed to their charge.

" 2. To compel them to pay to the corporation, or to its creditors, any money and the value of any property, which they have acquired to themselves, or transferred to others, or lost, or wasted, by or through any neglect of or their failure to perform or other violation of their duties. * * *

" 5. To set aside a transfer of property, made by one or more directors or officers of a corporation, contrary to a provision of law, where the transferee knew the purpose of the transfer."

Under these provisions a party entitled to maintain the action under section 61 of the General Corporation Law may do so if any misconduct has resulted in the waste of any money or property of the corporation, even money or property which comes out of surplus.

It is obvious that general creditors have no right to rely upon the assumption that all of the surplus assets of a corporation have in the past been fully conserved. One who becomes a creditor today cannot assume that the surplus assets which a corporation had a year ago have not been distributed among its stockholders. The surplus belongs primarily to stockholders, and in the general course of business is divided among stockholders in the form of dividends. Consequently when he advances credit as of today, he does not rely upon the fact that the corporation may have had a surplus a year ago.

The situation is different, however, with respect to the capital of a corporation. One who becomes a creditor at any time has a right to assume that the capital of a corporation has not been reduced by a distribution to stockholders at the time he extends credit. In view of the fact that the capital of a corporation is deemed to be a fund from which creditors may be paid (*Christianssand* v. *Federal S. S. Corp.; Matter of Fechheimer Fishel Co.; Cottrell* v. *Albany Card & Paper Mfg. Co.; Small* v. *Sullivan, supra*), one who extends credit in ignorance of a prior depletion of capital rightfully may complain that a director or stockholder has unlawfully depleted the capital to which he has a right to look for payment.

Applying these principles to the case before us, the fifth cause of action is insufficient and should be dismissed. It alleges merely that assets of the corporation were misappropriated. It does not allege that these assets constituted the capital stock of the corporation. It does not allege any fraudulent transfer as against subsequent creditors under the provisions of law applicable to fraudulent transfers. It, therefore, is necessary to allege that there were creditors in existence at the time of the unlawful act, and that these same creditors are still creditors. There is no such allegation in this cause of action.

The case of *Lummis* v. *Crosby* (176 App. Div. 315) was an action brought by a trustee in bankruptcy under section 90 of the General Corporation Law (now section 60) to compel the former officers to account for their official misconduct. On a demurrer interposed by one defendant a motion for judgment in favor of the plaintiff was denied and the order was affirmed (176 App. Div. 315). The court held that no cause of action was stated in the absence of an allegation of existing creditors at the time of the alleged waste or of a fraudulent transfer as against subsequent creditors. Later, on an application by another defendant for judgment on the pleadings directed toward the same complaint, judgment was granted to said defendant. This was affirmed without opinion by the Appellate Division (181 App. Div. 884) and in the Court of Appeals without opinion (224 N. Y. 611).

The complaint considered in both of these instances was the same, notwithstanding the statement made by the court in *Christianssand* v. *Federal Steamship Corporation* (*supra*), that " the complaint adjudged insufficient by the Court of Appeals [224 N. Y. 611, affg. 181 App. Div. 884] was not the one before the Appellate Division in 176 App. Div. 315." The fact that it was the same complaint which was before the courts in both cases is indicated at folios 28 to 51 of the records on appeal in the Appellate Division (176 App. Div. 315) and in the Court of Appeals (224 N. Y. 611). In said complaint there was no allegation of any scheme to defraud subsequent creditors and no allegation that there were existing creditors at the time of the waste of the corporate property. The complaint was deemed insufficient.

It has, therefore, been definitely held by the Court of Appeals in this State that under section 60 of the General Corporation Law there must be an allegation of existing creditors, although such allegation is not necessary under section 58 of the Stock Corporation Law. (See, also, *Quintal* v. *Greenstein*, *supra*, at p. 855.) The motion as to the fifth cause of action is granted.

With respect to the first cause of action, however, the conclusion must be different. In that cause of action there is a specific allegation that the distribution " was not made out of surplus, but constituted a withdrawal from and depletion of the capital of said corporation " (¶ 13). Under such an allegation the wrong is not only to existing creditors but also to subsequent creditors who have a right to rely upon the capital of a corporation in the same way as under section 58 of the Stock Corporation Law. The motion to dismiss the first cause of action is, therefore, denied.

Plaintiff may serve an amended complaint within twenty days after service of a copy of this order with notice of entry thereof.