WILLIAM H. DYKMAN, as Receiver, etc., Appellant, v. SETH L. KEENEY et al., Respondents.

*Dykman* v. *Keeney*, 16 App. Div. 131, affirmed.
(Argued June 16, 1899; decided October 10, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered May 4, 1897, affirming a judgment in favor of defendants entered upon a verdict directed by the court.

*James C. Bergen* for appellant.

*Jesse Johnson* and *A. Simis, Jr.*, for respondents.

Judgment affirmed, with costs, on opinion below.
PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT and MARTIN, JJ., concur.
BARTLETT, J., reads for reversal; VANN, J., concurs.

BARTLETT, J. (dissenting). This action was brought by the plaintiff, as receiver of the Commercial Bank of Brooklyn, to recover from the defendants as directors the amount of a dividend declared by them on the 28th day of June, 1892, amounting to the sum of $4,293.00, on the ground that the computation of profits and loss made in accordance with the provisions of the Banking Law, section twenty-six, showed on that day the bank had no surplus out of which to pay the dividend, and that the directors in paying the same made themselves liable to the penalty prescribed in the Stock Corporation Law, section twenty-three.

The defendants and respondents on this appeal take the preliminary point that this cause of action is not in the receiver. This position is based upon the statement that the action is for the benefit of creditors and can be maintained only by them.

The defendants further suggest that if such a cause of action as the one at bar can be prosecuted at law, it is only when the deficiency of assets exceeds the amount of the stock or the amount recoverable against the stockholders.

This objection of the defendants rests upon an entire misconception of the legal situation. This is not an action to adjust the rights and liabilities of the stockholders and to ascertain what amount is due from each in order to pay the debts of the bank. The liability of the stockholders is for the debts of the corporation; the liability of the directors is for a debt to the corporation, as well as to the creditors thereof, and is an asset. The collection of the debt to the corporation is for the benefit of its creditors and stockholders, but there is no joint relation between the penalty incurred by directors and the liability of stockholders; such a joinder of parties would be improper.

Where directors have declared and paid a dividend illegally the penalty is, that the amount so disbursed shall be restored to the treasury of the bank. It is clear that this is an asset which the receiver is bound to collect. It is a familiar doctrine that the stockholders are not liable until after the assets of the bank have been completely exhausted in the payment of debts.

The suggestion of the defendants, that the stockholders, having received this illegal dividend, are bound to account for it as between themselves and the directors, is clearly erroneous. When a dividend was declared by the directors, the stockholders, who acted without knowledge and in good faith, had a right to presume that it was legally made. (*Gaffney* v. *Colvill*, 6 Hill, 567.) The liability of stockholders to refund is not involved in this action.

It seems clear, upon principle, authority and statutory provisions, that the plaintiff, as receiver, is entitled to maintain this action. I refrain from discussing in a dissenting memorandum the statutes cited by appellant in this connection.

The Commercial Bank was incorporated July 7th, 1868, pursuant to the provisions of chapter 260 of the Laws of 1837. All the defendants in this action, at the time the cause of action arose, were directors of the bank. The dividend was declared June 28th, 1892. The bank became insolvent long after and just prior to August 30th, 1893. A temporary receiver was appointed August 30th, 1893, and by judgment of October 31st, 1893, the bank was adjudged insolvent and

the plaintiff appointed permanent receiver. By order of the court, dated December 9th, 1893, the plaintiff was ordered to bring this action.

At the directors' meeting, held June 28th, 1892, at which the dividend was declared, a statement of the standing and affairs of the bank was presented to the directors. This statement showed an apparent surplus of $93,682.22.

It is conceded that there were errors of bookkeeping in this statement, and in correcting them the receiver and the defendants reached a widely different result. The receiver claimed there was no apparent surplus profits, but an excess of liabilities of $101,975.13. The defendants claim that there was a final result of surplus profits of $19,761.79, which was sufficient to authorize the dividend involved in this action of $4,293.00.

The defendants claim as follows: That there should be deducted from the $101,975.13 of liabilities, as shown by the receiver's account, the sum of $80,000, represented by directors' notes, to be hereafter referred to; also other amounts not material to mention in this connection, as the disposition made of the item of $80,000 is controlling.

The statutes involved in determining the legality of this dividend are the Stock Corporation Law, chapter 688, Laws of 1892, § 23, which reads as follows: "The directors of a stock corporation shall not make dividends, except from the surplus profits arising from the business of such corporation; nor divide, withdraw or in any way pay to the stockholders, or any of them, any part of the capital of such corporation, or reduce its capital stock, except as authorized by law. In case of any violation of the provisions of this section, the directors under whose administration the same may have happened, except those who may have caused their dissent therefrom to be entered at large upon the minutes of such directors at the time, or were not present when the same happened, shall jointly and severally be liable to such corporation and to the creditors thereof to the full amount of the capital of such corporation so divided, withdrawn, paid out or reduced," etc.

Also the Banking Law (Chapter 689, Laws of 1892, § 26) which provides the method of computing surplus profits, from

which alone dividends can be declared. The section reads as to this point: " Interest unpaid, although due or accrued on debts owing to the corporation or banker, shall not be included in the calculation of its profits previous to a dividend. The surplus profits, from which alone a dividend can be made, shall be ascertained by charging in the account of profit and loss and deducting from the actual profits: 1. All expenses paid or incurred, both ordinary and extraordinary, attending the management of its affairs and transaction of its business. 2. The interest paid, or then due and accrued, on debts owing by it. 3. All losses sustained by it. In the computation of such losses, all debts owing to it, shall be included which shall have remained due, without prosecution, and upon which no interest shall have been paid for more than one year, or on which judgment shall have been recovered that shall have remained for more than two years unsatisfied, and on which no interest shall have been paid during that period."

The plaintiff has been defeated thus far in this litigation, by reason of the fact that the courts below have regarded section twenty-three of the Stock Corporation Law, above quoted, creating a liability of directors, who have paid an illegal dividend, as furnishing an indemnity for the corporation and not providing a penalty for the violation of the statute.

The learned Appellate Division said on the first appeal: " The capital stock being a fund intended to be kept intact to secure the solvency of the corporation and its responsibility to its creditors, the purpose of the statute is fulfilled by holding the directors to a liability for losses which actually result from their act, and not for those which are apparent only on the day the dividend is payable, but which are made good thereafter by the payment of the very debts which in order to establish the directors' liability must be treated as losses." (10 App. Div. 610.)

I think this is an erroneous view of the law. The legislature has determined what on that day (the day when the dividend is declared) shall or shall not constitute a loss, and has decided the question as to whether or not the liability of directors is to be established by conditions existing on that day. The legislature has not undertaken to determine or fix

the liability of directors by reason of any subsequent increase or decrease in the assets or by any other test than the one which the statute prescribes.

It seems clear that the provision of the statute which renders directors liable to the corporation and its creditors to the full amount of the capital of such corporation as is embraced within the dividend is a penalty and not an indemnity in any form. This was held under the Fraudulent Bankruptcies Act of 1825 in *Bank of Niagara* v. *Johnson* (8 Wend. 656), and also by this court in construing certain provisions of the Manufacturing Act of 1848. (*Excelsior Petroleum Co.* v. *Lacey*, 63 N. Y. 422; *Stokes* v. *Stickney*, 96 N. Y. 323.)

The important and controlling question raised by the defendants is that the resources of the bank on the day the dividend was declared should be increased by the item of $80,000, of what is called "directors' notes."

On October 11th, 1889, about two years and a half before this dividend was paid, and after the superintendent of the banking department had examined the affairs of the bank, the eight directors of the bank signed the following paper: "Whereas a doubt exists in the minds of the directors of the Commercial Bank and in the mind of the Superintendent of the Banking Department as to the soundness and character of some of the debts and receivables of said bank, and in order to remove the doubt so existing and to make the said bank unquestionably solvent, the directors have each made their note for ten thousand dollars, making a total sum of eighty thousand dollars, as follows:" (Then follow the signatures of the eight directors with ten thousand dollars opposite each name.)

This paper and the accompanying notes were then placed in the vault of the bank and remained there until discovered by the temporary receiver subsequent to his appointment.

In September, 1893, considerably more than a year after the dividend had been paid, at the instance of the receiver and upon the insolvency of the bank, the notes were paid to him. The history of these notes is, that the bank never paid any money for them; they were never demanded; the bank never received any interest upon them; no prosecution was ever had upon them; the notes remained the identical

86

paper from the time they were made until turned over to the receiver in about four years from the time they were executed.

On June 28th, 1892, when the dividend was declared, they were two years and eight months old; they did not anywhere appear upon the books of the bank as charged against the makers; they were never included in the list of resources presented by the bank, nor in the quarterly statement rendered by the bank to the superintendent of the banking department; they did not enter into the affairs of the bank at all.

The Appellate Division said in regard to these notes: That they did not determine any other question than that the notes at the time of their delivery constituted an asset of the bank, based upon the view that it was the intent of all the parties that these notes should constitute security for a fund to care for bad and doubtful debts then held by the bank.

I am unable to agree with this conclusion of the Appellate Division and adopted by this court. The character of these notes on the 28th day of June, 1892, when the dividend was declared, is the material question here.

The officers of the bank have placed their own construction upon the nature of this paper. As pointed out, it was not referred to in any of the statements made to the superintendent of the banking department and did not appear as an asset upon the books.

It certainly cannot be that the directors of a bank, for the purpose of declaring a dividend, can secretly execute their notes for a given sum and lock them up in a vault and treat them as creating a surplus which would warrant the payment of a dividend.

These notes, which were not discovered until long after the dividend had been paid, are not to be considered as assets at the time it was declared. If the directors of the bank had so considered these notes, they would have included them in their statement made to the directors on the 28th day of June, 1892, the day the dividend was voted.

If the legality of the dividend is to be decided by considering the financial situation of the bank on the day it was declared, then it was unauthorized unless the $80,000 of directors' notes are treated as an asset.

I am thus brought to the important question in this case, viz., the construction of the statutes already quoted. (Stock Corporation Law, ch. 628, Laws 1892, § 23; The Banking Law, ch. 689, Laws 1892, § 26.)

If the Stock Corporation Law imposes no penalty upon directors for declaring dividends when they work an impairment of capital, and if the Banking Law in determining how surplus profits are to be ascertained and how losses are to be computed in order to determine surplus profits, does not refer to the *status* on the day the dividend is declared, then this judgment is right and must be affirmed.

The result would be that these statutes are to be regarded as applying exclusively to winding up the affairs of insolvent corporations. I cannot agree to this, but think the proper construction is that they apply to going corporations as well as to those in the hands of receivers.

It is a matter of the gravest concern to the business community whether a perfectly solvent bank and its creditors are protected against the acts of dishonest or incompetent directors in declaring dividends when there are no surplus profits, and the effect of which is to impair the capital of the corporation.

As an illustration — assume a bank having a capital of a million dollars, its directors declare a dividend of fifty thousand dollars when there are no surplus profits as computed under the Banking Law, § 26, and as a necessary consequence the capital is impaired to that extent. This impairment does not create immediate insolvency, but it is a serious loss, and may not the bank in its own interest, and the interests of its creditors, invoke the protection of the Stock Corporation Law, § 23, and compel the directors to restore the capital thus unlawfully withdrawn? Is it possible that the corporation must wait until repeated unlawful dividends have impaired its capital to the point of insolvency before it can invoke the provisions of the statute?

The object of this legislation is not far to seek. The interests of the business community and a sound public policy demand that directors be held to a strict accountability in maintaining the capital unimpaired when the corporation is a going concern.

The construction that has been given these statutes is to confine their operation to those final results disclosed when the assets are marshalled in proceedings to wind up an insolvent corporation. Dishonest or incompetent directors, representing a solvent corporation and proposing to make a dividend when there are no surplus profits, under section twenty-six of the Banking Law, if this construction is to prevail, can say, the statute does not furnish us a present rule for the protection of the capital of which we are the custodians, but is an enactment in a state of suspended animation, having no force or effect until the corporation is insolvent.

The statutes under consideration ought to be construed so as to protect solvent corporations, and this being so it follows that on the 23rd day of June, 1892, when the dividend in the case at bar was declared, the $80,000 of directors' notes could not be, and were not, considered as assets by the board of directors, and that the financial situation of the bank on that day showed no surplus profits, and as a consequence the dividend was unauthorized and illegal.

The judgment appealed from should be reversed.