### HOFKIN et al. v. UNITED STATES SMELTING CO. et al.

(Circuit Court of Appeals, Third Circuit. July 8, 1920.)

No. 2546.

Corporations ⟨⟩=334—Corporation held not "insolvent," so as to make directors liable for declaration of dividend.

A manufacturing corporation, which at the time a dividend was declared and paid had a prosperous business, a small indebtedness, and a surplus exceeding the sum of the dividend and indebtedness but which shortly afterward became insolvent through the unforeseen decline in price of its raw material, for purchase of which it then had outstanding contracts, *held* not "insolvent" when the dividend was declared, nor rendered insolvent by its payment, within Act Pa. April 29, 1874 (P. L. 102) which makes the directors declaring a dividend in either such case liable for the debts of the corporation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insolvent.]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in equity by the United States Smelting Company and others

against Mendel Hofkin and others. Decree for complainants, and defendants appeal. Remanded. For opinion below, see 261 Fed. 546.

Francis Shunk Brown and Alfred Aarons, both of Philadelphia, Pa., for appellants.

R. Stuart Smith, Alfred T. Steinmetz, and Albert L. Moise, all of Philadelphia, Pa., for appellees.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

BUFFINGTON, Circuit Judge. This case concerns the application to its facts of a statute of Pennsylvania (Act April 29, 1874 [P. L. 102]) which provides:

"If the directors of any company declare any dividend when the company is insolvent, or the payment of which would render it insolvent, they shall be jointly and severally liable for all the debts of the company then existing, and for all thereafter contracted, so long as they respectively continue in office: Provided, that the amount for which they shall be liable shall not exceed the amount of such dividend."

The American Galvanizing Company was a corporation of Pennsylvania. On May 31, 1916, its directors declared a dividend, payable June 3, 1916, which necessitated the withdrawal from its treasury of $50,000. Some time thereafter the company went into the hands of a receiver, whereupon the United Smelter Company, a corporation of Maine, filed its bill in equity against Hofkin and others, who were directors of the Galvanizing Company and citizens of Pennsylvania, and thereby sought, by virtue of the provisions of the quoted statute, to hold the defendants individually liable for the indebtedness to it by the Galvanizing Company. On final hearing the court below entered a decree adjudging the defendants so liable. From this decree they appealed to this court.

The facts of the case are practically undisputed. No fraud is alleged; the court stating, in its opinion holding them responsible, that—

"The finding made against them involves no finding of moral turpitude and no finding of fraud in that sense."

Such being the fact and finding, the determination of this case narrows to a question of fact, namely, whether the defendant directors did, in the words of the statute, "declare any dividend when the company is [was] insolvent, or the payment of which would render it insolvent."

The pertinent proofs are summarized in the extract quoted in the margin from the court's opinion.[1] The plaintiff company was among

---

[1] "Before the declaration and payment of this dividend the corporation had done a prosperous business, and at that time was in a prosperous condition. It had net assets, including the contributions to its capital, valued at $71,-134.99, and a surplus applicable to the payment of dividends of $58,940.85. There is nothing to impeach the integrity of this statement of its financial condition, although of course its plant (and properly so) in this balance sheet summary was put at its value as a going concern, and not at its liquidating value as a bankrupt venture. It had outstanding contracts for the

those referred to in the court's finding quoted below, in that at the time of the declaration of the dividend it had a contract with the Galvanizing Company by which the latter had bought from the Smelting Company, for delivery during the summer, quantities of spelter (zinc). At the close of business on May 10, 1916, the Galvanizing Company's assets amounted to over $71,000, and its accounts payable to less than $2,200. Its surplus was nearly $59,000. Of its assets, over $25,000 was cash in hand, and its accounts and notes receivable were nearly $19,000. From this summary, it is clear the company was not insolvent when the dividend was declared, and its subsequent payment did not leave it insolvent, or make it so. It will therefore be seen that the first requirement of a statutory liability on the part of the director defendants, namely, their declaring a "dividend when the company is insolvent," is not proven to have existed.

We therefore pass to the second statutory ground on which liability of the directors was conditioned, and address ourselves to the inquiry whether the dividend declared was one "the payment of which would render it [the corporation] insolvent." We have already seen that the withdrawal of the dividend actually left the company possessed of assets to pay all claims that could be then made upon it, and therefore such payment did not, and indeed could not, render it insolvent. But, when the further facts on which the court below based its conclusion

purchase of spelter, the raw material which it used in its manufacturing processes. These contracts proved the undoing of the company, as the drop in the price of spelter, which followed the making of the contracts to purchase, entailed a destructive loss upon the purchaser.

"It is urged with earnestness, however, that at the time the dividend was declared there was not only nothing to indicate the imminence of a loss, but, on the contrary, much to found the expectation of a profit from these contracts, because the trend of the market prices of spelter was at that time upward. The facts affecting this phase of the inquiry were not sufficiently developed to enable us to make any definite findings. This is because the plaintiff was seeking to get the facts through cross-examining of the defendants, and proceeded with a noticeable wariness, and the defendants' trial tactics were (as they would be expected to be) dictated by the policy of imposing upon plaintiff the burden of proving its case. It is not wholly clear whether the purchase of spelter, in the quantities in which it was bought, were speculative or for manufacturing uses, nor is it by any means clear what the promise of the market as to future ranges of prices was at the time the dividend was declared.

"The plaintiff was in position, however, to have made this last-mentioned feature entirely clear, and, as it had failed to do so, the defendants have a right to the finding (which is now made) that there is no evidence of the price of spelter being below the contract price at the dividend date. The market was, however, so feverish and fluctuating, and the general condition such, that there could not be said to be any stable market, and the difficulties of securing supplies so great that there was uncertainty in respect to future market conditions affecting the supply and price of spelter, and an even greater uncertainty respecting the prospects of the manufacturing business in which the corporation was engaged. The debts of the company then presently demandable did not exceed $2,200 in amount. The total indebtedness at the time of bankruptcy, a few months afterwards, was many thousands, but none of this (beyond the $2,200) had on the dividend date matured into a presently payable debt, and existed only in the form of obligations resting upon executory contracts in the form of purchases of spelter for future delivery."

of liability are analyzed, it will be seen that the subsequent insolvency of this company resulted from other causes, and those of such an unseen and overpowering character that, had the dividend not been paid, its retention would not have prevented the company from becoming insolvent by reason of these further causes. Those other causes were that the Galvanizing Company used, in its manufacturing operations, spelter or zinc, a material largely in demand, due to the then existing war conditions, and had made, at favorable prices, contracts for the delivery to it during the summer of large quantities of this commodity.

As found by the court below, there was "no evidence of the price of the spelter being below the contract price at the dividend date." Indeed, the situation was such as indicated rising prices, for the competition of the different allied governments for spelter was keen, and bade fair to further enhance its value. But during the summer the allied governments, instead of continuing to compete with each other in the market in the purchase of spelter and other needed war material, established a joint buying agency. As a result of this unexpected step, the price of spelter gradually declined, with the result that, on account of its inability to accept the deliveries and finance payments, as it had theretofore been able to do, the Galvanizing Company during the summer, in order to prevent the sacrifice of its assets, was compelled to go into the hands of a receiver. As the price of spelter continued to still further decline after the receivership, and its losses on its contracts under maturing conditions grew larger and larger, the Galvanizing Company eventually became insolvent.

It will be seen that this insolvency was due to the decline thus brought about in the price of spelter by the allied governments and their unexpectedly eliminating competition for it. Such being the real cause of insolvency, and not the payment of the dividend, it follows that neither of the averred statutory grounds for holding the directors liable were established, and therefore the decree entered below, which held them responsible under the statute, was in error.

It will therefore be vacated, and the cause remanded to the court below, with instructions to dismiss the bill.