EDWARD J. QUINTAL and Others, Trustees in Bankruptcy of CONSOLIDATED FACTORS CORPORATION, Bankrupt, Plaintiffs, *v.* OSCAR GREENSTEIN and Others, Defendants.

Supreme Court, New York County, February 29, 1932.

*Gleason, McLanahan, Merritt & Ingraham* [*George C. Austin, Charles F. Bailey* and *Hamilton A. Long* of counsel], for the plaintiffs.

*Steckler, Frank & Steckler,* for the defendant Alfred Bleyer.

*Henry, Meyers & Manne,* for the defendant Jacob Manne.

*Arnold M. Schmidt,* for the defendant Simon Newman.

*Jacob Goldberg,* for the defendant Algernon I. Nova.

*Lewis, Marks & Kanter,* for the defendant Morris H. Adler.

*Robert P. Levis,* for the defendant Edward Stern.

*Lind, Shlivek, Marks & Brin,* for the defendant Isidore Grossman.

McCook, J. The trustees in bankruptcy of a domestic business corporation sue its directors, under section 58 of the Stock Corporation Law, to recover the amount of a dividend declared and paid from its capital and/or capital stock, in violation of that section. Plaintiffs seek to strike out defenses which, though variously worded, are all seen upon analysis to fall into one or more groups alleging (a) good faith, (b) due care, (c) action prematurely brought. The first defendants named in the caption, Greenstein and Pelz, are alleged in some of the answers to have been the only managing directors and also the officers; they are charged with fraudulent over-valuation of assets on the corporate books, and it was their written statement, together with the audit of a reputable firm of accountants, upon which the eight other defendants say they relied. The motion concerns the answers of these eight other defendants.

What I have designated as the third group of defenses attacks the sufficiency of the complaint by asserting that plaintiffs failed. first to exhaust their remedies against the stockholders who received the dividend. It must be stricken out as insufficient. To compel pursuit of the stockholders before holding the directors is unreasonable and would often prove impractical. No statute requires it, and no authority is found to justify it. (See *Irving Trust Co.* v. *Gunder*, 234 App. Div. 252; *Bartlett* v. *Drew*, 57 N. Y. 587.)

It might be suggested, although defendants' counsel have not seen fit to mention the point at this stage, that the complaint is insufficient and for that reason the motion to dismiss the affirmative defenses should be denied, on the authority of *Bernard* v. *Chase National Bank* (233 App. Div. 384). The complaint does not say that there were creditors of the corporation in existence at the time the unlawful dividends were paid out who are still such creditors. In actions under former sections 90, 91 and 91-a, now sections 60, 61, of the General Corporation Law, an allegation of the sort has been held essential and its omission fatal. (*Lummis* v. *Crosby*, 176 App. Div. 315; 181 id. 884; affd., 224 N. Y. 611; *Garrison* v. *Pope*, 130 Misc. 290.) To the contrary are *Muller* v. *Pero* (135 Misc. 424) and *Christianssand* v. *Federal S. S. Corp.* (121 id. 627). I am of opinion that in an action based solely upon section 58 of the Stock Corporation Law, it is not necessary to plead the existence at the time of creditors who are still creditors. Mr. Justice COLLINS has expressly so held in *Walker* v. *Man* (142 Misc. 277, at p. 283). (See, also, *Irving Trust Co.* v. *Gunder, supra*, where the complaint in an action brought under section 58 contained no such allegation, and, nevertheless, the court, O'MALLEY, J., writing, held it unnecessary for recovery that insolvency result and creditors alone be injured, because the assets of the corporation belong pri-

marily to the corporation.)  *Cottrell* v. *Albany Card & Paper Mfg. Co.* (142 App. Div. 148, at p. 150) and *Small* v. *Sullivan* (245 N. Y. 343, at p. 350) contain expressions to a similar effect.

We turn to the principal defenses of good faith and due care.  The statute under discussion, after providing that no stock corporation shall declare or pay any dividend which shall impair its capital or capital stock, enacts that (italics ours): " In case any such dividend shall be paid, * * * the directors in whose administration the same shall have been declared or made, *except those who may have caused their dissent therefrom to be entered upon the minutes of the meetings of directors at the time or who were not present* when such action was taken, shall be liable jointly and severally *to such corporation and to the creditors thereof* to the full amount of any loss sustained *by such corporation or by its creditors* respectively by reason of such dividend * * *."  (Stock Corp. Law, § 58.)

Since for the purposes of the motion it must be assumed that the eight directors acted in good faith and even that an examination of the books would not have disclosed the over-valuation, the question is squarely raised whether the expression in the statute of two excuses only, viz., recorded dissent at the meeting and absence from the meeting, serves to exclude all others.

No authorities controlling our decision have been found on either the defense of good faith or that of due care.  We find in the opinion of *Wesp* v. *Muckle* (136 App. Div. 241, 4th Dept. [1910]; affd., without opinion, 201 N. Y. 527) language admittedly broad enough to dispose of the former.  At page 244 the court said: " In the present case the action of the director in his official capacity is involved.  The declaration of dividends was very carefully guarded by section 23 of the former Stock Corporation Law, which has been revised into section 28 of the present Stock Corporation Law, and no such distribution of corporate assets can be legally made unless the net earnings clearly justify such a division.  Any director violating this salutary provision is liable to the corporation, ' and to the creditors thereof to the full amount of any loss sustained by such corporation or its creditors respectively by reason of such withdrawal, division or reduction.'  (Stock Corp. Law [Gen. Laws, chap. 36; Laws of 1892, chap. 688], § 23, as amd. by Laws of 1901, chap. 354; revised in Stock Corp. Law [Consol. Laws, chap. 59; Laws of 1909, chap. 61], § 28.)  If a director present at a meeting of the board desired to be absolved from the liability imposed by this statute he could cause his dissent to be entered at large upon the minutes of the directors at the time.  Whether the director knows the exact condition of the corporation is unimportant.  It is his duty to ascertain whether the earnings authorize the withdrawal

of the corporate assets to pay a dividend. If he can be excused because he did not know the condition of the corporation, the effect of the statute would be nullified."

Is the decision itself, as contrasted with the court's discussion of it, in point? An examination of the record on appeal shows that the pleadings are silent as to good faith or its opposite, while the charge expressly states that knowledge and willfulness have nothing to do with the subject. No request was made or exception taken by defendant to raise the issue in which we are interested. The sole important question left to the jury was whether the dividend had been paid out of the capital or surplus. The grounds of appeal were alleged errors in the admission of documentary evidence, viz., ledgers, etc., which it was argued defendant did not know about or understand. We find that the decision in the Appellate Division did not necessarily involve or pass upon our point, and consequently that affirmance by the Court of Appeals is not decisive of it.

A dictum to similar effect appears in *Rorke* v. *Thomas* (56 N. Y. 559, at p. 564): " The dividend was in substance declared by that resolution. I am of opinion that the defendants, by that act, rendered themselves liable to the penalty denounced by the statute. They may have acted in good faith believing that the claim was not a valid liability; but the prudent and lawful course for them to pursue was to have kept the fund to await the result of the litigation. By dividing it among themselves they became personally liable."

In *Dykman* v. *Keeney* (10 App. Div. 610, at p. 617; 16 id. 131; affd., 160 N. Y. 677) the court spoke even more strongly as to the liability of directors for impairment of capital by dividends: " This result, by force of the statute, follows the failure to deduct, from the actual profits, debts that should be classed as losses, whether that failure is intentional or a mere error, and the effect of the statute is to make the directors guarantors of every debt which it is prescribed should be charged to the profit and loss account, but which the directors have omitted to so charge, to the extent that the payment of the dividend may reduce the capital below the sum fixed in the charter."

In *Gaffney* v. *Colvill* (6 Hill, 567 [1844]), which involved a statute similar to ours, Mr. Justice BRONSON of the Supreme Court (later chief judge of the Court of Appeals) said (at p. 576): " It is further objected to the first count, that it should have been alleged that the directors *knowingly* made the dividend from capital, and not from surplus profits. But the statute says nothing about a *scienter*. It declares that it shall not be lawful to make a dividend, except from surplus profits. It was the business of the defendant and the

other directors to inform themselves on the subject before they declared a dividend, and their ignorance can be no answer to the action * * *. It was the business of the directors to know how much money had been loaned on paper upon which they were themselves responsible; and if the amount exceeded one-third of the capital stock of the bank, they must answer to the creditors and stockholders for the loss which they may have sustained in consequence of the wrong."

There are New York decisions which construe other statutes relating to the duty of directors and hold that good faith is not a defense in an action brought by the corporation or its creditors against the directors for a violation of the statute. . (*Darcy* v. *Brooklyn & N. Y. Ferry Co.*, 196 N. Y. 99; *Feigenbaum* v. *Narragansett Stables, Inc.*, 127 Misc. 114; affd., without opinion, 219 App. Div. 729; affd., 245 N. Y. 628; *Osgood* v. *Laytin*, 3 Keyes, 521.) In the *Darcy* case the Court of Appeals said (at p. 104): " Their omission to make adequate provision for the protection of the creditors (as required by statute) was proof of their dereliction and good faith constitutes no defense."

On the other hand, we have this expression in *Cottrell* v. *Albany Card & Paper Mfg. Co.* (142 App. Div. 148, 153, 3d Dept. [1911]): " The courts have sometimes refused to apply this rule when either the directors or stockholders, or both, have made and received the dividend in good faith, that is, not knowing or supposing it to have been paid out of profits, but such is not this case."

Among the very few decisions in point outside New York is *City of Franklin* v. *Caldwell* (123 Ky. 528), which supports, as far as it goes, the present plaintiffs' main contention. In my opinion the authorities from other jurisdictions cited upon one side or the other in the briefs are not holdings on the question of good faith or due care, but *dicta*. (See *Southern California Home Builders* v. *Young*, 45 Cal. App. 679; *Cornell* v. *Seddinger*, 237 Penn. St. 389; *Hofkin* v. *U. S. Smelting Co.*, 266 Fed. 679; *Chick* v. *Fuller*, 114 id. 22.) Because of the special stress laid upon *Chick* v. *Fuller* by defendants, I quote from the Illinois statute whose construction was there in question (par. 19, chap. 32, p. 1009, 1 Starr & Curtis Ann. [2d ed.]): " If the directors or other officers or agents of any stock corporation shall declare and pay any dividends when such corporation is insolvent, or any dividend the payment of which would render it insolvent, or which would diminish the amount of its capital stock, *all directors * * * assenting thereto* shall be jointly and severally liable for all debts of such corporation then existing, and for all that shall thereafter be contracted, while they shall respectively continue in office." (Italics ours.)

The trial judge used the following language (114 Fed. 24): "This statute, as I think, clearly implies that the director assenting must do so knowingly, or be guilty of such gross negligence with respect to informing himself of the conditions of the corporation, when prudent action would readily have informed him of its condition, that the law will presume knowledge."

The facts were similar to those set up by our defendants. In passing upon them and the charge below, GROSSCUP, J., speaking to that extent for the Circuit Court of Appeals, at page 29 of the same report similarly emphasized "assent." Obviously, it was the presence of that word in the Illinois law which proved decisive. The New York statute, as we have seen, fails to name "assent" by a director as a prerequisite to a cause of action against him, and no court has ever held it capable of such an implication; it does *per contra* expressly mention "dissent" as one of the two defenses recognized. (Cf. *Lippitt* v. *Ashley*, 89 Conn. 451.)

It is believed that with the sole exception of *Smith* v. *Henderson* ([1924] 1 Dom. L. Rep. 863), where the Quebec Superior Court held that good faith and due care constitute defenses, there is no case in which a statute substantially in the form of ours has been so interpreted. Of course, where the language of the legislation is different, decisions like *Chick* v. *Fuller* (*supra*) are to be expected, but have no bearing upon our New York situation.

At common law a director was not liable for paying a dividend out of capital where he acted in good faith. (*Excelsior Petroleum Co.* v. *Lacey*, 63 N. Y. 422; 2 Cook Corp. § 550.) The problem, therefore, is whether section 58 of our Stock Corporation Law has enacted a liability more rigid than that existing at common law. Some text writers have expressed the view that even under the New York statute good faith is a defense. (Ballantine Manual of Corporation Law and Practice, pp. 538, 539.) The New York Law Journal apparently reached the same result in an editorial published April 11, 1928. The editor of the note in 55 A. L. R. 8 (at p. 83), on the contrary, says: "The New York statute has been construed as rendering the directors liable for any loss sustained by the corporation or creditors through the payment of an illegal or unauthorized dividend, regardless of the question whether the failure on the part of the directors to make proper deductions in ascertaining the surplus profits was intentional or merely an error."

Mr. Spellman, in his book on Corporate Directors (at p. 599), takes the position that the New York statute renders the directors absolutely liable unless excused by absence from the meeting, or dissent expressed at the meeting.

To sanction the defense of good faith would be to read into the

statute something which its authors designedly excluded. This court cannot approve the attempted explanation in defendants' brief for continuous use in our statute, from 1825 to date, of the same definite and unmistakable limitations despite the scrutiny of many a committee on revision. At common law good faith was a defense. The New York legislators might have adopted the common-law rule, as has been done by the legislators of other States. (See, for example, Gen. Corp. Law of Florida, §§ 6050 and 6581; Corp. Act of New Jersey, § 30; Revised Laws of Vermont, §§ 4939 to 4942; Gen. Corp. Law of Delaware, § 34, as amd. by Laws of 1929, chap. 135, § 16.) They refrained from doing so. Manifestly, the purpose of our Legislature was to impose on directors a liability in respect to unlawful payment of dividends greater than that prevailing at common law. (Cf. Penal Law, § 664, subd. 1.)

The long separate defense already mentioned, reciting reliance on auditors and deceit by associates, constitutes merely an extension of the defenses of good faith and due care. That is not one of the excuses provided in the statute. If permitted to stand it will in effect render impossible a recovery against directors for the unlawful payment of dividends through the difficulty of proof. Directors have a duty to inform themselves of the condition of their company, by as long and arduous an investigation as may be necessary. If they fail to investigate personally, they are responsible for the accountants or other subordinates who do it for them. If the directors, although acting in good faith, have been unfortunate in their choice of such individuals or deceived by their fellow-directors or by the officers, it is they themselves who should suffer rather than innocent third parties with no voice in the matter. Some of our defendants had been directors for only a short period before the meeting at which the dividends were declared. It might at first blush seem unduly harsh to charge them with the same measure of liability as others who perhaps had been in office for years, but the New York statute makes no distinction based on length of service or degree of activity, and these very defendants could have protected themselves, easily and completely, by absenting themselves from the meeting or recording their dissent on its minutes. They should not have voted a dividend unless certain of its legality. (Cf. the dictum, apparently to the contrary, in *Gaffney* v. *Colvill*, *supra*, at p. 576.)

The editor of the note in 35 Yale Law Journal, 870 (1926), entitled "The Statutory Responsibility of Directors for Payment of Dividends out of Capital," reaches the conclusion that good faith should be a defense even under the New York statute. If good faith is a defense, certainly due care also must be a defense. The writer

stresses the idea that a stricter rule will make it impossible for modern corporate affairs to be conducted, because no responsible man will place himself in the position of an insurer by accepting the office of director. If strictness in imposing legal liability may drive away those who lack time to do their full duty or are content to remain figureheads, that is rather an argument for reading section 58 according to its tenor. Which consideration is to prevail, if either must, that a loose construction will nullify the act, or that a strict interpretation will discourage busy and intelligent men from serving? The question seems to carry its own answer. One can scarcely imagine (as a practial matter) so gloomy an alternative, for surely the legal requirements as they now appear cannot have remained so long hidden from those who sought wise counsel. Should there indeed occur such a searching of hearts and sifting of boards as defendants foresee, might not that result in a larger proportion of those who actually direct, as contrasted with mere casual advisers?

I hold that the defenses of good faith and due care, however worded, are insufficient in law.

In conclusion it should be recalled that just as these defendants were under no obligation to accept the office of director, so they were under no obligation to declare a dividend. The declaration and payment of a dividend is a matter resting within the exclusive control of the directors in their honest discretion, and courts will not interfere with their honest exercise of this discretion. (*Williams* v. *Western Union Telegraph Co.*, 93 N. Y. 162.) Again and again it has been held that the purpose of section 58 of the Stock Corporation Law was to guard and preserve the capital stock of a corporation and to keep it intact, so as to secure its solvency and responsibility to all concerned. To uphold the defenses pleaded in these eight answers would defeat the very purpose of the statute.

Recent instances of relaxing the severity of enactments which impose upon directors liability for the payment of unlawful dividends should not be overlooked. Within the past three years at least six States have adopted statutory provisions which in effect make reliance in good faith upon the corporate books or the audit of a reputable accountant an absolute defense. (See Cal. Laws of 1931, chap. 862, § 363; Del. Laws of 1929, chap. 135, § 34; Ohio Gen. Code, § 8623 *et seq.;* 1 Code Tenn. [1932] § 3759; Nev. Comp. Laws 1929, § 1625, as amd. by Laws of 1931, chap. 224, § 8; Ark. Laws of 1931, chap. 255, § 25.) Such an immunizing standard of routine offers a theory of directing responsibility quite different from that under which the business of this State has been transacted for more than a century. (See address by William Byrd, Esq., before the

New York State Bar Association in 1928, printed in vol. LI, N. Y. S. B. Assn., p. 101, entitled " The Liability of Directors of New York Corporations.") If persons here engaged in corporate enterprises feel the necessity for change, " Those considerations are for the Legislature. They do not relieve us of the duty to enforce the law as it is written." (CARDOZO, J., in *Honig* v. *Riley*, 244 N. Y. 105, 110, 111.) The motion to strike out the affirmative defenses is in all respects granted, with ten dollars costs.