PORTER A. GREENE, as Trustee in Bankruptcy of SMITH-KINNEY Co., INC., Bankrupt, Plaintiff, *v.* ALBERT H. BOARDMAN and Others, Defendants.

Supreme Court, Broome County, March 24, 1932.

*Merchant, Waite & Waite* [*Keenan, Brink & Harrison* of counsel], for the plaintiff.

*Jenkins, Deyo & Hitchcock*, for the defendants.

HEATH, J. This is an action by a bankruptcy trustee of the Smith-Kinney Co., Inc., against the directors pursuant to section 58 of the Stock Corporation Law. The plaintiff claims that in the spring of 1928 the defendants as directors authorized and consented to the retirement of preferred stock and the declaration of dividends in the total sum of $14,940, at a time when there was no surplus out of which said payments could be made.

The defendants have alleged as a first defense that all creditors at the time of the illegal acts have been paid in full; that all of the stock of the corporation is now owned by two of the defendants; and that all of the present creditors became such with full knowledge of the illegal acts and after a surplus of $20,000 in excess of capital and current liabilities had been created.

The second or partial defense alleges that two of the largest present creditors were permitted to, and did, have representatives as vice-president and treasurer of the bankrupt corporation at a time when there were surplus assets and their claims could have been paid in full.

This is a motion to strike out the aforementioned defenses as insufficient in law.

Upon the argument of the motion it developed that in the spring

of 1928 certain real estate of the corporation was sold for the sum of $65,000. This real estate had been carried on the books at $38,112.05. Shortly after this sale the preferred stock, amounting to $12,000, was retired and dividends aggregating $2,940 were paid. At the time of these payments there were outstanding 653 shares of common stock at $100 par value. Counting the common stock as a liability there was not a surplus from which the preferred stock could be retired and the dividends declared.

In the fall of 1928 two of the defendant directors became the sole owners of the common stock, and in February, 1929, legal proceedings were had whereby all of the common stock was surrendered to the corporation and non par common was issued in its place at a stated value of $10 per share. A certificate showing the retirement of this stock was immediately filed in the Broome county clerk's office. When the original common stock with par value of $100 was surrendered for non par common with a stated value of $10, the capital liability of the corporation was reduced from $65,300 to $6,530, which immediately created a surplus of $20,000 over and above capital and current liabilities of every nature.

Section 58 of the Stock Corporation Law provides that " No stock corporation shall declare or pay any dividend which shall impair its capital or capital stock,   *   *   *   nor shall any such corporation declare or pay any dividend or make any distribution of assets to any of its stockholders, whether upon a reduction of the number of its shares or of its capital or capital stock, unless the value of its assets remaining after the payment of such dividend, or after such distribution of assets, as the case may be, shall be at least equal to the aggregate amount of its debts and liabilities including capital or capital stock as the case may be. In case any such dividend shall be paid, or any such distribution of assets made, the directors in whose administration the same shall have been declared or made,   *   *   *   shall be liable jointly and severally to such corporation and to the creditors thereof to the full amount of any loss sustained by such corporation or by its creditors respectively by reason of such dividend or distribution."

It would seem to be clear from the reading of this section that the right of action against directors is not by way of a penalty but is only for such " loss sustained by such corporation or by its creditors respectively." If the statute were intended to penalize offending directors it could have assessed a penalty regardless of any loss.

The validity of the first defense may well turn upon the meaning of the word " loss." Does it mean consequential loss so that the extent of the liability of the offending directors will include resultant insolvency? In other words, does the statute permit a

claim that although the directors impaired the capital only to the extent of $14,940, yet the result of that act was bankruptcy whereby there was a consequential loss of $100,000 and, therefore, the directors are liable for $100,000? It would seem not.

The Appellate Division of the Third Department in the case of *Cox* v. *Leahy* (209 App. Div. 313, at p. 315) says: " The amount of the directors' liability under this section of the statute is confined to the loss sustained by the corporation or its creditors by the wrongful payment of the dividend; that is, to the amount that the dividend paid exceeded the surplus profits of the corporation at the time. (*Shaw* v. *Ansaldi Co., Inc.,* 178 App. Div. 589, 599.)" In the case of *Shaw* v. *Ansaldi Co., Inc.,* (*supra,* at p. 600) the court held that if a dividend were declared in the sum of $10,000 which impaired the capital to the extent of only $5,000, " The purpose of the statute would be subserved in such case by requiring them to restore sufficient of the amount of the dividend declared and paid to make good the impairment of capital." The plaintiff in this case makes no claim for $14,940 — the amount of actual impairment of capital.

As of what time is the " loss " to be determined? Must the " loss " be determined as of the date of the illegal act? Can the " loss " be recouped or cured? In other words, does the mere violation of the statute create an absolute and irremissible liability or must this violation be attendant with an actual ultimate loss? It would seem that the loss must be one in fact and that it can be abated.

In 1892 that which is now section 58 of the Stock Corporation Law was section 23; the directors of the Commercial Bank of Brooklyn declared a dividend when, as it was claimed, the actual financial statement before them did not establish a surplus from which a dividend could be paid. Under the Banking Law any obligation which was more than a year past due could not be considered as an asset. There were in the bank's hands at the time the dividend was declared certain notes totaling $80,000 which were in fact more than a year past due and which were not, and could not be, included in the financial statement. In other words, there was not a legal surplus from which a dividend could be declared. An action, entitled *Dykman* v. *Keeney,* was brought against the directors and it appeared upon the trial that after the dividend was declared and before the action was brought the $80,000 notes were paid in full. The Appellate Division, Second Department (10 App. Div. 610), held that the subsequent payment of the $80,000 cured the technical liability of the directors, saying (at p. 618): " If no loss is sustained by the payment of a dividend, then, although there may have been a violation of law and

wrongdoing, no liability is created. To illustrate, suppose in calculating the profits from which to pay a dividend, by mistake a note overdue for a year and a day, and on which no interest had been paid, or no suit commenced, should be included in the resources of the bank, which, if it had been charged to profit and loss, would have left the bank without a surplus. Suppose, also, that on the day following the payment of the dividend such note should be paid in full to the bank. It could not in such a case, it seems to me, be said that the bank had in fact sustained a loss from the payment of the dividend, or that the capital had been thereby reduced, or a part thereof paid out. Yet such would be the conclusion we should be forced to adopt, if the directors' liability is to be finally determined and irrevocably fixed on the day the dividend is payable. A construction of the statute which would permit such a result is unreasonable and unjust, as it would permit the bank, or its creditors, to collect the old debt which should have been charged to the profit and loss account, and, after its payment, to enforce the liability against the directors for a loss that was not in fact sustained. The capital stock being a fund intended to be kept intact to secure the solvency of the corporation and its responsibility to its creditors, the purpose of the statute is fulfilled by holding the directors to a liability for losses which actually result from their act, and not for those which are apparent only on the day the dividend is payable, but which are made good thereafter by the payment of the very debts which in order to establish the directors' liability must be treated as losses."

Upon the trial of the action in the *Dykman* case a verdict had been rendered in favor of the plaintiff. This was reversed for the reason set out in the above quotation and a new trial was granted. Upon the new trial the court directed a verdict in favor of the defendants in accordance with the opinion in volume 10 of the Appellate Division Reports at page 610. The plaintiff then appealed to the Appellate Division, whereupon the court in volume 16 of the Appellate Division Reports at page 131, reiterated the position taken upon the former appeal and discussed more at length other phases of the case. The judgment of the trial court in directing a verdict for the defendants was unanimously affirmed. The plaintiff took appeal to the Court of Appeals, which by a vote of five to two, affirmed the judgment appealed from. (*Dykman v. Keeney*, 160 N. Y. 677.) It is the contention of the attorney for the plaintiff in the instant case that the affirmance of the Court of Appeals was an affirmance only of the case in 16 Appellate Division, and not an affirmance of 10 Appellate Division. It would seem that the Court of Appeals clearly affirmed the proposition of law stated by the Appellate Division in 10 Appellate Division.

A reading of the dissenting opinion clearly indicates this fact. (See 160 N. Y. 677.)

The *Dykman* case, therefore, establishes the proposition that the loss shall not be irrevocably determined in accordance with the conditions as they existed on the day of the declaration of dividends or retirement of stock and that subsequent events may cure the technical illegality to the extent that they may make good the actual loss.

Having determined that an illegal impairment of capital may be cured and the loss thereby entailed made good by subsequent events we are now to determine whether or not the subsequent surrender of the common stock was such a cure.

Upon the argument of this case, in answer to a question of the court, counsel for plaintiff conceded that if the common stock had been surrendered for non par common upon the day the preferred stock was retired, there would have been no right of action. This would seem to be so for the reason that in the case of *Strong* v. *Brooklyn Cross-Town R. R. Co.* (93 N. Y. 426) the court held that a dividend may be declared out of a surplus created by the reduction of capital stock. If this be so, then why could not a legal reduction of the capital stock which set up a surplus of $20,000 over and above all indebtedness, cure the illegality? It would seem that it could.

It is undoubtedly true that section 58 of the Stock Corporation Law is for the benefit of future, as well as present, creditors to the end that directors may not secretly impair the capital of a corporation and thus deplete assets upon which future creditors have a right to rely. This was indicated by Presiding Justice WALTER LLOYD SMITH in the case of *Cottrell* v. *Albany Card & Paper Mfg. Co.* (142 App. Div. 148), when he said (at p. 151): " If a wrong is done to its present creditors by secretly decreasing the total assets out of which payment of its debts could be enforced by them, no less a wrong is done to persons who subsequently become its creditors without notice of the depletion of such assets and who consequently will have a right to assume that the directors have not violated the express terms of the statute regarding unauthorized dividends." Presiding Justice SMITH says (at p. 152): " If all who should become creditors after the withdrawal had notice of the fact that the capital had been reduced — that the dividend had been paid out of the capital — then the distinction might, perhaps, be maintained * * *." Surely it would seem that if subsequent creditors had knowledge of the impairment of capital and that this impairment had been cured then they could not be heard to complain.

If after the surrender of the common stock for non par common and the creation of the $20,000 surplus, the corporation had been dissolved in accordance with law, was there any one who could complain by virtue of section 58 of the Stock Corporation Law? Suppose that a new corporation had been formed, taking over the liabilities and assets just as they appeared upon the books of the corporation after the surplus had been set up, could any subsequent creditor of the new corporation claim redress pursuant to section 58? It would seem not.

This court is not unmindful of the language used in the case of *Hutchinson* v. *Curtiss* (45 Misc. 484, at p. 492), which seems to hold that the cause of action against directors who declare dividends by impairment of capital is not affected by accrued profits under a new management. It would seem that if impairment of capital can be cured, and the liability set up by section 58 is not a penalty, then the test should be whether or not the cure was one of fact or subterfuge. In the case of *Small* v. *Sullivan* (245 N. Y. 343) the cure was merely a subterfuge and not one of fact. In that case the defendants consolidated a corporation with another and fixed the capital of the new corporation at a figure which showed a surplus when as a matter of fact the capital of the original corporation was heavily impaired. Judge CRANE well said (at p. 354): " I know of no form of law or statute which will prevent a court of equity from seeking out the fraud, looking beyond the forms to the actual facts   *   *   *.   Compliance with forms of law does not amount to absolution for fraud."

There was evidently no subterfuge used in the case at bar. When the capital stock was surrendered for non par common, a certificate to that effect was filed in the county clerk's office and the answer alleges that each of the present creditors of the corporation had actual knowledge of all the circumstances.

The first defense alleges that all of the creditors at the time of the illegal act have been paid in full — hence they can claim no loss; that the common stockholders surrendered their stock with full knowledge of the illegal act in order to cure the same and that two of the present defendants are the sole owners of the stock — hence the corporate owners, *i. e.*, the corporate entity, can claim no loss; and that each of the present creditors became such with full knowledge of the fact that the illegality had been cured — hence they can claim no loss. This court is of the opinion that this defense, if established, would be a bar to recovery.

It is the position of the second or partial defense that after the surplus of $20,000 was effected the Drybak Corporation and the First National Bank of Binghamton became substantial creditors,

and that on the 11th day of April, 1930, one Herman A. Speh, a principal officer of the Drybak Corporation, and John D. Brunner, Jr., an officer of the First National Bank of Binghamton, were elected directors, vice-president and treasurer, respectively, of the now bankrupt corporation; that from the time when the said Speh and Brunner became directors and officers of the now bankrupt corporation there was a substantial surplus over and above all debts and liabilities, including capital stock, and the obligations owed to the Drybak Corporation and the First National Bank could have been collected in full and that such condition existed for a long time; that the said Speh and Brunner consented to and advised the continuing of the business of the now bankrupt corporation, which business was continued at a loss, and that the said Speh and Brunner continued to represent said creditors upon the board of directors of the now bankrupt corporation up to, and until, it was declared bankrupt. It is the contention of the defendants that by virtue of these facts the two aforementioned creditors of the bankruptcy are estopped from participation in this action.

If the first defense be successful, it will be because of the abatement of the liability by the creation of the surplus. This defense operates against all creditors, which includes the Drybak Corporation and the First National Bank of Binghamton. If the first defense be unsuccessful, it will be by virtue of a holding that the cause of action set up by section 58 of the Stock Corporation Law is by way of an irremissible penalty and not because of actual loss sustained. If the liability be by way of a penalty, then the second or partial defense is in fact insufficient in law since nothing there impleaded would be a bar to a penalty action. If the recovery in this action be by way of a penalty the United States court in a bankruptcy proceeding must determine who shall participate in the sum recovered. This court holds, therefore, that if the second or partial defense is intended to reallege the matters of abatement set forth in the first defense, it is insufficient in language so to do, and that if it is alleged as a partial defense to a penalty action, it is insufficient in law.

The motion to strike out the first defense is denied. The motion to strike out the second or partial defense is granted.