## 16152

BAKER *ET AL.* v. MUTUAL LOAN & INVESTMENT CO.
GARY v. COTTER *ET AL.*
(50 S. E. (2d) 692)

*Messrs. Charles B. Elliott* and *Richard E. Broome,* of Columbia, *for Appellants,*

560

*Mr. Thomas H. Pope,* of Newberry, *for Respondent,*

December 3, 1948.

OXNER, Justice.

This action was brought by the receiver of the Mutual Loan and Investment Company, a South Carolina corporation, upon an obligation executed by the directors on April 9, 1943, whereby they jointly and severally agreed to repay to said corporation the sum of $5,591.72, representing the aggregate amount paid as dividends to the preferred stockholders.

The corporation was organized in 1939 for the purpose of making loans on automobiles, refrigerators and other personal property. The capital structure consisted of both common and preferred stock. The principal organizer was one J. F. Beall who sold stock to the public on a commission basis. Beall largely managed the affairs of the corporation after its organization although he was never an officer or director. Beginning with the quarter ending on September 30, 1939, and continuing through the quarter ending on December 31, 1942, quarterly dividends of 7% were regularly paid to the preferred stockholders. For the fiscal year ending May 31, 1940, the company lost $1,298.37 and the dividends paid amounted to $412.64; for the year ending May 31, 1941, there was a profit of $34.13 and $1,783.47 paid in dividends; for the year ending May 31, 1942, there was a profit of $96.98 and $2,304.98 paid in dividends; for nine months ending March 6, 1943, there was a profit of $2,154.29 and the dividends paid amounted to $1,090.63. It, therefore, appears that from the organization of the corporation until March, 1943, there was a net profit of $987.03 and during this period the dividends paid the preferred stockholders amounted to $5,591.72. The record does not contain the operating statements for the subsequent years but it seems to be conceded that the business was operated at a loss. No dividend was ever paid to the common stockholders and no further dividend was paid to the preferred stockholders after December, 1942.

The directors claim that they authorized the payment of these dividends on the representation by Beall that the earnings warranted such action. The attorney for the company testified that on several occasions he cautioned Beall in the presence of some of the directors not to pay dividends unless they were earned. During the period in which these dividends were paid, Beall, with the knowledge of the directors, continued to sell stock to the public.

In March, 1943, an examining officer of the Securities and Exchange Commission came to Columbia and after investigating the affairs of the company, advised the directors that it would be necessary for them to restore the dividends which had been paid from the capital of the corporation. Beall and the attorney for the company made a trip to Atlanta for the purpose of adjusting the matter in some manner but were unsuccessful. The examiner later returned to Columbia where there was further discussion. As a result of these conferences, a meeting of the directors was held at which they agreed to restore all dividends which had been paid and thereafter on April 9, 1943, all of the directors, along with Beall who was not a director, executed the obligation upon which this action is brought. On April 19, 1943, the secretary and treasurer of the company, pursuant to a resolution adopted at a meeting of the board of directors held on April 9th, sent a letter to the stockholders in which he stated: "Some of the dividends on preferred stock were paid out of capital surplus, but the directors have made good this amount created by the payment of unearned dividends on preferred stock out of capital surplus, by executing and delivering their promissory notes." He further set forth in this letter the amounts paid monthly for salaries, rent and other overhead expenses, stating that the "directors have never received any remuneration for attending the directors' meeting and I am the only director receiving any salary now", and assuring the stockholders that the "directors are doing everything possible to conserve the interest of the

company." Attached to this letter was a financial statement of the company as of March 6, 1943, which included as an asset the following item: "Notes receivable—restoration of dividends—$5,591.72."

The directors contend that both the obligation mentioned and the above letter were prepared by the examiner for the Securities and Exchange Commission and testified they were told by him that unless they agreed to restore the dividends and authorized the mailing of the letter, they would be prosecuted. Some time later that year Beall died.

On February 23, 1945, the directors adopted a resolution authorizing and directing the secretary and treasurer of the company to pay each director the sum of not less than $750-.00 for services rendered to that date. In the annual audit made several months later it was stated that the item of $5,-591.72 had been eliminated as an asset by crediting each director who signed the obligation with the sum of $700.00 in accordance with the resolution of the board of directors.

On January 3, 1947, the directors passed a resolution appointing a Columbia attorney as "liquidating agent", who thereafter, with the consent of the directors and stockholders, sold all the assets, with the exception of the obligation involved in this controversy, for the sum of $3,300.00. On February 13, 1947, Frank B. Gary, Jr., Esq., was appointed receiver for the company and he promptly qualified. A hearing was had on the question of confirming the sale of the assets theretofore made by the liquidating agent and in the order confirming this sale the item of $5,591.72 was specifically excluded.

This action, based upon the obligation signed by the directors on April 9, 1943, was commenced in April, 1947. The directors alleged in their answer (1) that the books and records of said corporation showed that the earnings were sufficient to warrant the payment of the dividends and that they were so informed by Beall; (2) that the agreement

to restore the dividends was without consideration and obtained under duress; (3) that they were led to believe that they would never be called upon to pay said obligation; and (4) that no loss resulted to the corporation or the stockholders from the action of the directors because if the dividends had never been paid, the amount paid to the preferred stockholders would now be distributed among this same class of stockholders. By consent of the parties the cause was referred to the Master for Richland County who, after taking the testimony, filed a report in which he found that the defendants were liable for the principal of the obligation sued upon, together with interest thereon, amounting as of February 23, 1947, to $6,919.17, but against this the directors were entitled to an offset of $6,000.00, or $750.00 for each of the eight directors signing the obligation, for services rendered to the corporation, leaving a balance due of $919.76. Upon exceptions by all parties to this report, the matter was heard by the Resident Judge of the Fifth Circuit who held that the Master was in error in allowing said offset and that the receiver was entitled to judgment for the full amount of said obligation with interest. This appeal by the defendants followed.

The obligation upon which this action was brought is referred to throughout the record and in briefs of counsel as a "note." For convenience and brevity we shall do likewise, although this classification may not be technically accurate.

We shall first discuss appellants' contention that there was no consideration for this note. Ordinarily dividends can be rightfully paid only out of profits. The directors of a corporation are liable at common law if in bad faith, or through gross negligence or inattention, they unlawfully pay dividends when there are no surplus profits available for their payment. Fletcher Cyc. of Corporations, Permanent Edition, Volume 12, Section 5431, page 140. Whether such liability can be based upon mere negligence is a question that we need not determine on this appeal. The

subject is now regulated by statute in most jurisdictions. These statutes differ very materially, however, as to the nature and extent of the liability imposed, as well as by whom such liability may be enforced. Some are merely declaratory of the common law. Under others the liability of the directors is absolute and exists even though they declare the dividends in good faith. *Quintal et al. v. Greenstein et al.*, 142 Misc. 854, 256 N. Y. S. 462. Many of these statutes go further and make the directors criminally liable for declaring and paying unearned dividends.

We have no statute in this State expressly imposing civil liability upon a director for paying dividends which have not been earned. Section 7724-3 of the Code of 1942, however, imposes criminal liability. It is as follows: "It shall be unlawful for any incorporated company to pay any dividends on the capital stock of such company, unless the same have been actually earned, or paid out of any surplus heretofore earned, and not set aside for a special purpose, upon the approval of the stockholders of the incorporated company to be affected. * * * Any violation of this section by the officers or agents of such company shall be punished by fine of not less than five hundred dollars, or imprisonment for not less than six months."

There being no statute in this State fixing a different liability, the principles of the common law are controlling in determining whether there was any existing liability on the part of appellants at the time the note was executed. It is asserted that the directors exercised ordinary care and that the trial Judge disregarded this issue and assumed that liability existed from the mere fact that the dividends were paid from capital assets. The record shows, however, that the question of negligence or gross negligence was not raised by the exceptions to the report of the Master and was not, therefore, properly before the trial Judge. But if we assume that the issue is properly before us, we think the evidence not only shows a case of negligence but gross

negligence or inattention on the part of these directors in authorizing the payment of the dividends. The only explanation offered by those who testified is that they relied on the statement of Beall that the earnings warranted the declaration of the dividends. The annual audits clearly disclosed that the business was being operated at a loss. The president of the company testified: "I looked at them (the audits) as a matter of interest but not being able to interpret auditor's figures, of course, I could not tell much about them." He admitted that he knew that the expenses of organization of the corporation amounted to aproximately $7,000.00 when the capital stock was only $35,000.00. Despite the large organization expenses, dividends on the preferred stock were paid at the end of the first quarter when any reasonable person must have known that such action would deplete the capital stock. The trial Judge found that appellants "were business men of some prominence in the city of Columbia." The conclusion is inescapable that they either knew or should have known that the dividends were being paid from capital. It was their duty to inform themselves of the condition of the company which could not be discharged by shutting their eyes and blindly relying on any statement made by Beall, who was not a director or officer of the corporation and at the time was selling its stock to the public on a commission basis and, therefore, obviously interested in making it appear that the company was prosperous. None of the directors testified that they made any inquiry of the auditors of the company as to its earnings.

It is further contended that even though the directors were negligent, no one suffered any loss. Appellants claim that during this period the corporation owed no debts and the preferred stockholders could not have maintained an action to compel the directors to replace a part of the capital previously distributed among and retained by such stockholders. In support of this contention, appellants rely on *Spiegel v. Beacon Participations*, 297 Mass. 398, 8

N. E. (2d) 895, and other cases to the effect that where no creditors are involved, it would be unjust to require the directors to pay over again to the stockholders what they had already received as dividends. This contention leaves out of consideration the rights of the common stockholders at the time the note was executed. The capital of the corporation was then seriously impaired by the illegal acts of the directors. The common stockholders had a vital interest in the preservation of the capital assets. These assets could not be depleted by the payment of unearned dividends to one class of stockholders to the injury of another class. At that time any of the common stockholders could by appropriate proceedings have compelled the corporation itself to recover the funds unlawfully withdrawn.

For the reasons stated, there existed at the time of the execution of this note a liability on the part of the makers to the corporation for the amount unlawfully diverted from its capital. The note was given to satisfy this liability. It was based upon a sufficient consideration.

Interrelated with the question just discussed is appellants' further contention that if the receiver is permitted to recover on this note, such recovery will inure directly to the benefit of the same class of stockholders to whom the dividends were paid. It is said that the corporation has never been declared insolvent and no creditors are complaining. The record is silent on the question of whether the corporation is now insolvent. Respondent asserts in his brief that he was appointed receiver on the grounds of "mismanagement and insolvency" but the order appointing him as receiver is not included in the record. We are, therefore, not advised as to whether the corporation is now solvent or if solvent, whether the common stockholders will receive anything in this liquidation. The facts relating to these matters, however, would have no material bearing on the questions we are now called upon to determine. If, as we have concluded, there was a valuable consideration for this note,

it should now be regarded as any other asset of the corporation. The vital question is not whether the receiver of this corporation could at this time maintain an action against the directors for the illegal payment of dividends but whether the receiver is entitled to recover on a valid obligation held by the corporation. We are now concerned only with the enforcement of the obligation and not with the distribution of the proceeds after its collection.

Appellants further attack the validity of the note upon the ground that it was obtained under duress. It is conceded that no criminal prosecution was ever commenced and no director ever arrested. The examiner of the Securities and Exchange Commission was not present when the note was executed or when the directors met and authorized the secretary to send to the stockholders the letter heretofore mentioned. One of the directors testified that they were told that if the note was not executed, they would be prosecuted. Another testified that he was led to believe that prosecution would follow unless the note was signed. As stated by the trial Judge, "no testimony was offered as to what, if any, criminal action was threatened by this agent; nor, indeed, what criminal prosecution could lie against them (the directors)." We have held that the note is supported by a valid consideration between the parties to it. It could not be said, therefore, that the note was given solely for the purpose of compromising or stifling a public prosecution. See *Bankhead v. Shed et al.,* 80 S. C. 253, 61 S. E. 425, 16 L. R. A., N. S., 971, 15 Ann. Cas. 308. Although this instrument was executed in April, 1943, appellants, with full knowledge of all the circumstances, made no claim of duress until this action was commenced approximately four years later. Both the Master, who saw and observed the witnesses, and the Circuit Judge found the facts against appellants on the issue of duress. Their conclusion is sustained by the greater weight of the evidence and we would

not be warranted in disturbing it even if we applied the rule governing appeals in equity cases.

For the reasons just stated, there is no merit in appellants' further contention that they were compelled under threats of criminal prosecution to send to the stockholders the letter of April 19, 1943.

The remaining question is whether appellants are entitled to offset against this obligation the amount authorized to be paid to each director (the sum of not less than $750.00) at the meeting of the directors held on February 23, 1945, for services rendered to that date. We need not enter into a general discussion of the circumstances under which the directors of a corporation are entitled to compensation or the rules governing the allowance of compensation for services already performed without a previous agreement for remuneration. There was no *bona fide* effort here to compensate the directors. As held by the Court below, "the compensation voted was for the sole purpose of offsetting the liability of those directors who had signed the agreement of April 9, 1943." At the time the directors sought to vote themselves compensation, the corporation was losing money. It had a deficit of over $16,000.00 and only $2,800.00 in cash. There is no suggestion in any of the minutes of meetings of the directors prior to February 23, 1945 that they expected or intended to claim compensation. The only directors sought to be compensated were those who signed the obligation. No compensation was awarded to others who had served as directors and among those voted compensation no distinction was made as to the length of service. A director serving for one year was paid the same compensation as another serving for five years. The fact that several of these directors had been salaried officers was not taken into account. Beall, who had signed the note, was awarded the "bonus" although he never served as a director but was a salaried employee. The following is

taken from the cross examination of the president of the corporation:

"Q. It (the bonus of $750.00) was not a *bona fide* payment for services rendered which would have been made if you had never signed the note in the first place?

"A. No, sir.

"Q. You will admit that the payment of the $750.00 bonus was for the sole purpose of discharging your liability to the company?

."A. Yes, sir.

"Q. You will also admit that you regarded the payment of that $750.00 bonus as relieving you of all liability to the corporation?

"A. Yes, sir."

We further agree with the Circuit Judge in holding "that defendants, by their conduct and by their statements to the stockholders, were and are estopped to claim compensation for any services which they did render." The suggestion is made by appellants that the stockholders were not induced by the letter of April 19, 1943 to do or refrain from doing anything to their detriment. It is fair to assume, however, that except for the statements contained in this letter appropriate action to protect the interests of the corporation would have been taken much earlier.

All exceptions are overruled and judgment below affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concurr.